## WILLIAM CARDWELL V. ANN M. ROGERS.

### No. 2716.

1.  **Wife can not Empower Husband to Execute Deed.**—A wife can not by a power of attorney empower her husband to execute a deed for her separate property.

2.  **Case Adhered to.**—Cannon v. Boutwell, 53 Texas, 626, adhered to.

3.  **Case in Judgment—Will—Estoppel—Practice.**—A wife owning as separate property a tract of land, made a will giving her estate to her daughter, appointing her husband independent executor with power to sell and reinvest the proceeds, the will designating the tract of land in controversy. Subsequently she executed a power of attorney, with privy acknowledgment, to her husband, under which he exchanged the land for another tract. Soon afterwards the wife died and the will was probated. The land acquired by the exchange was inventoried as her property. Soon after her death the parties exchanged possession, the husband with his daughter, the legatee, residing upon the acquired land. The husband sold from this tract a part thereof, receiving the purchase money, the purchaser taking possession. Seven months after her majority the daughter sued in trespass to try title for the tract her father had disposed of in the exchange. No offer was made by plaintiff to reconvey that acquired, though she disclaimed ownership of it. The defendant did not ask a reconveyance, but set up improvements, which, however, were not insisted upon on the trial. *Held:*

1.  The will, speaking from the death of the wife, evidences that the maker did not know of her husband's effort to exchange the land for other land, or that she regarded the effort as not affecting her estate in the land disposed of by the will.

2.  The will did not authorize the ratification of the invalid conveyance.

3.  While under the will the husband could have disposed of the land, yet he did not; nor were his acts in moving upon the acquired land, inventorying it, and keeping possession, etc., an execution of the power or an estoppel against the legatee.

4.  It was not necessary to entitle plaintiff to recover that a reconveyance be tendered of the lands received in exchange for that sued for.

5.  The defendant not having asked affirmative relief, can not complain that it was not granted.

6.  The residence of plaintiff during her minority with her father as part of his family upon the land did not charge her with an approval of the exchange of the lands, but if she had so done, her suit, having been brought within reasonable time after reaching majority, would be an avoidance of such act if done while a minor.

7.  The suit being for an undivided interest, the right of the defendant to improvements may be protected on partition. Judgment affirmed without prejudice to the right of defendant to compensation for the improvements.

APPEAL from Gonzales.　Tried below before Hon. Geo. McCormick. The opinion states the case.

*Harwood & Harwood,* for appellant. — 1.   The deed from Mary Susan Rogers and husband Byrd R. Rogers, and Ann E. Rogers and husband John S. Rogers to William Cardwell, conveying the land in suit, which was signed and acknowledged in person by all the grantors except Ann E. Rogers, whose name was signed by her agent John S. Rogers under a properly authenticated power of attorney, was a compliance with every essential element of the statute, and passed the title of all the grantors thereto.   Rev. Stats., arts. 559, 4310; Patton v. King, 26 Texas, 685; Ochoa v. Mills, 59 Texas, 460; Warren v. Jones, 69 Texas, 462; Kelly on Cont. of Married Women, sec. 22.

2.   The power of attorney to John S. Rogers is by its terms and scope sufficient to authorize an exchange in the sense of exchange as was made in the transaction in controversy, to-wit, a sale for a landed consideration expressed in the deed.   4 Am. and Eng. Encyc. of Law, pp. 128, 132, and notes; 2 Minor's Inst., pp. 668, 703.

3.·  The action of the agent John S. Rogers in exchanging the land in suit for the lands and property in Caldwell County under the power of attorney was concurred in and confirmed both by the principal in her lifetime and by her executor after her death by plenary discretionary powers conferred on the executor by her will.   When an agent exceeds his authority his principal can not avail himself of the benefit of his act, and at the same time repudiate his authority.   Hunt v. Blackburn, 126 U. S., 464.   As to subsequent ratification and estoppel *in pais,* see 1 Am. Lead. Cases, 573; Reese v. Medlock, 27 Texas, 124.   With regard to her separate estate, a married woman is practically *sui juris,* and may be estopped.   Jones v. Reese, 65 Ala., 134; Howell v. Hale, 5 Lea, 405; Powell's Appeal, 98 Pa. St., 403.

4.   The court erred in his conclusion of law in which it is held "that neither the legal effect of the will of Ann E. Rogers, nor the acts of John S. Rogers, the executor and testamentary guardian, can legally bind the plaintiff herein, and that therefore there is no such ratification of the deed made under the power of attorney as can affect the rights of the plaintiff." [See opinion.]   Howell v. Hale, 5 Lea, 405; Powell's Appeal, 98 Pa. St., 403; Stephenson v. McFaddin, 42 Texas, 330; 1 Pom. ·Eq. Jur., secs. 385, 388; Thomas v. Beaton, 25 Texas Supp., 321; Brown v. Witter, 10 Ohio, 144; Tom v. Wollhoefer, 61 Texas, 281; Coddington v. Wells, 59 Texas, 53; Hunt v. Turner, 9 Texas, 388; Mills v. Alexander, 21 Texas, 163; Fanning v. Dunham, 5 Johns. Ch., 142–44; 2 Pom. Eq. Jur., secs. 910, 915; Neblitt v. Maifarland, 92 U. S., 103; Byard v. Holmes, 33 N. J., 127; Coolidge v. Brigham, 1 Metc., 550; People v. Stephens, 71 N. Y., 553; Garland v. Bowling, Hemp., 711.

5.   Under the facts found by the court, viz., the fairness and good faith of the trade; the exchange of possession; the fact that plaintiff has permitted the Caldwell County property to go to decay, and to greatly

deteriorate in value, and that they have sold a part of it, and are now insolvent and unable to restore to defendant his property, and have not offered to do so in so far as they are able—for these reasons the court erred in not concluding that plaintiff was estopped from asserting any legal claim she might have under defendant's plea of equitable estoppel. The acts of an administrator may be set up as an estoppel *in pais* to bar a recovery by the estate which he represented. Thomas v. Brooks, 6 Texas, 369; Thomas v. Greer, 6 Texas, 372. An administrator who admits a claim against the estate to be good, and thereby induces a third person to purchase it, is estopped to interpose a defense against it in the hands of such third person. Swenson v. Walker, 3 Texas, 93; Howard v. Battle, 18 Texas, 673. When an ancestor has acquiesced in acts so as to conclude a party, her heirs are likewise concluded. Portis v. Hill, 30 Texas, 529. In this case the court says: "But blended as our system is, embracing both the law and the equity of every case under adjudication, the principles of equity as well as of law may be applied in determining their admissibility as proofs in the cause. They are all muniments of ancient date, and the defendants, from proof *aliunde*, are shown to have recognized and acted upon them from their origin, as if well understood and admitted facts; and it would seem ungracious and unconscientious at this late date to attempt to ignore and repudiate them as facts to secure an unrighteous advantage. The law must hold parties to their admissions, whether by words or deeds; and they must be estopped and precluded from the assertion of claims in derogation of the rights of others, and falsification of their own deliberate acts of admission, unless those admissions were made by mistake, or extorted by fraud or compulsion." For doctrine laid down in case of estoppel by acts. Scoby v. Sweatt, 28 Texas, 730; Mayer v. Ramsey, 46 Texas, 374; Lewis v. Castleman, 27 Texas, 407; Horn v. Cole, 51 N. H., 287; 2 Pome. Eq., sec. 804, p. 263.

*W. S. Fly*, for appellee.—1. The power of attorney executed by Ann E. Rogers to her husband John S. Rogers, authorizing him to sell her separate property, was invalid, and the deed executed by him to Cardwell did not convey his wife's title to the land in controversy. Cannon v. Boutwell, 53 Texas, 626; Warren v. Jones, 69 Texas, 462; Dooley v. Montgomery, 72 Texas, 429.

2. Had the power of attorney been a valid one, and had it given full power to sell the land, it did not authorize an exchange or barter of the land for other property. Reese v. Medlock, 27 Texas, 120; Mann's Ex. v. Robinson, 19 W. Va., 49; Craighead v. Peterson, 72 N. Y., 279.

3. To estop Mrs. Ann E. Rogers or her heirs from asserting right to the land, she must be guilty of some positive fraud, or of some conceal-

ment or suppression which in law would be equivalent thereto. Berry v. Donley, 26 Texas, 745; Johnson v. Bryan, 62 Texas, 623.

4. Neither married women nor minors are estopped *in pais* unless their conduct has been intentional and fraudulent, and mere acquiescence or silence during minority or coverture will not estop the infant or *feme covert*, and neither would the infant be estopped by the acts of her guardian or executor, in law or equity. Crayton v. Munger, 9 Texas, 285; Fitzgerald v. Turner, 43 Texas, 79; Steed v. Petty, 65 Texas, 490; Spencer v. Carr, 45 N. Y., 406; Davis v. Bagley, 40 Ga., 181; Kane County v. Harrington, 50 Ill., 232; Coal v. Pasco, 79 Ill., 170; Bank v. Lee, 13 Pet., 118.

5. Appellant knew, or could have known by reasonable diligence, that Mrs. Rogers had no legal right to make her husband her attorney or agent, and in the absence of any false representations or inducements held out to him by appellee or her mother, he is in no position to avail himself of the law of estoppel. Berry v. Donley, 26 Texas, 745; Steed v. Petty, 65 Texas, 490; Coal v. Pasco, 79 Ill., 170; Crest v. Jack, 27 Am. Dec., 353.

STAYTON, Chief Justice.—The land in controversy belonged to Ann E. Rogers and Mary S. Rogers as tenants in common. They were both married women when the conveyance out of which this litigation arises was made, the former being the wife of John S. Rogers and the latter the wife of Byrd R. Rogers. Appellee is the child of Ann E. and John S. Rogers, and was born on April 29, 1866.

On the 23d of February, 1877, Byrd R. Rogers entered into a memorandum agreement with the defendant William Cardwell, by the terms of which defendant agreed to sell and convey in exchange his lands situated in Caldwell County, known as the Cardwell Sour Springs place, which consisted of 440 acres of land and a half interest in 8 acres, on which was situated mineral springs, with a commodious hotel, all fitted up for entertaining visitors. Byrd R. Rogers, for himself and his wife, and his brother John S. and his wife, agreed to convey to defendant the 771 acres described in the petition. It was not shown that Byrd R. had any written power or other authority to bind his associates in said contract.

On August 4, 1876, the mother of appellee executed to her husband a power of attorney which in terms empowered him "to make sale of and convey all of my interest" in the tract of land in controversy, which was acknowledged by her before a notary public as are required to be conveyances made by married women of their separate estates, the husband not joining therein.

On March 15, 1877, in pursuance of the agreement of February 23, Cardwell conveyed to Mary S. and Ann E. Rogers his lands in Caldwell County, and Byrd R. Rogers and wife and John S. Rogers, acting for himself and for and in the name of his wife, under the power before re-

ferred to, conveyed the land in controversy to Cardwell. The transaction was an exchange of lands, the respective deeds showing that the lands conveyed on the one side were the consideration for the conveyance from the other.

The court below found that the transaction was fair and in good faith, and, in effect, that the properties at the time were of about equal value.

Mrs. Ann E. Rogers died testate on May 1, 1877, her will bearing date February 5, 1876. The will was probated, and contained the following provisions:

"1. I give all and entire my real and personal property to my dearly beloved daughter and only child Ann Maria Rogers, said property consisting of the following lands, viz.: One-half undivided interest in and to 1555 acres out of the headright of Green De Witt, known as the Broadnax place, about six miles above the town of Gonzales, in Gonzales County."

"3. I nominate and appoint my husband John S. Rogers executor of this my last will and testament, and direct that no security shall be required of him as executor.

"4. It is my will that my executor heretofore named have power to manage fully my estate, with power to sell any part thereof and invest in other property, as may appear to him most conducive to the interest of my said daughter Ann Maria Rogers.

"5. It is my will and desire that my said executor be empowered to surrender my estate hereby delivered to my said heir at such time as he may deem proper for her interest." * * *

The executor returned an inventory of the estate of his deceased wife on September 18, 1877, and therein embraced the interest of his wife in the property conveyed by Cardwell as the consideration for the land sued for, which was appraised at $4000.

In January, 1878, John S. Rogers, with his minor daughter, appellee, and Byrd R. Rogers took possession of the land conveyed by Cardwell, and thereon remained and continued until the trial of this cause; but on November 19, 1879, Byrd R. Rogers, joined by his wife, and John S. Rogers, acting under the power conferred on him by the will of his wife, conveyed to one Vogle 198 acres of the land conveyed by Cardwell, for a consideration of $700, which Vogle's heirs occupy and claim under that deed.

The court found that "at the date of the exchange and the date when the Rogers took possession of the Caldwell County property, the hotel was a large new building of new lumber, well finished, and well furnished with new furniture for hotel purposes, and also a good family dwelling house; and that the spring was walled up, and well fixed, with two bath houses; that there was a good barn, and stables, and crib, and the farm was enclosed with a good substantial fence, and in good state of cultivation. That now, and at the time of the commencement of this suit, the hotel was in a dilapidated condition, the furniture all gone, one side of the

house fallen· down, and now used for storing hay and for a stable, and in an uninhabitable condition; the bath houses and other improvements all decayed and from neglect had mostly disappeared; the fences around the farm mostly removed and used for fire wood; the farm grown up in bushes, leaving but a few acres in cultivation; also the timber on the land mostly cut down and destroyed. That the place in Gonzales County sued for has been greatly improved by defendant Cardwell. The dwelling has been repaired with new roof, new floors; the field has been enlarged by taking more land, and is in good condition, with new fences; also, he has built five new tenant houses, and new stables, cribs, lots, garden, and orchard— all done before the commencement of this suit."

The court further found that the entire tract, one-half of which is involved in this action, at time of trial was worth \$5600, and that the Caldwell County property, conveyed by Cardwell to Mrs. Mary S. Rogers and the mother of appellee, was then worth \$2000; that John S. Rogers, Byrd R. Rogers, his wife, and appellee are insolvent, and that Cardwell has paid all taxes on the land in controversy since he took possession on January 1, 1878.

Appellee has not reconveyed or offered to reconvey to Cardwell the interest in the land which passed to her mother under the conveyance made by him, but in her pleadings disclaims any interest in it.

This suit was brought by appellee on November 17, 1887, to recover one-half of the land conveyed to appellant, and the answer of defendant set up the facts on which the defenses hereafter to be noticed were founded, but under these he sought only to defeat appellee's action, and made no prayer for any affirmative equitable relief based on the facts pleaded; but he did set up claim for improvements made in good faith, on which the court below it seems took no action.

There was a judgment for appellee for the land claimed by her, from which this appeal is prosecuted.

The court below having found that the power of attorney executed by the mother of appellee to her father did not give him lawful power to make the conveyance to appellant, it is urged this holding was erroneous.

The facts bearing on this question are, in all essential respects, the same as were the facts in the case of Cannon v. Boutwell, 53 Texas, 626, decided in 1880. In that case, as in this, the power of attorney to the husband was executed by the wife alone and acknowledged by her as instruments are required to be to convey the separate property of a married woman.

In each case the instrument attempted to empower a husband to sell the separate property of his wife specifically described in it, and in executing the power the husbands joined in the deeds in their own rights and as attorneys in fact executed them in the names of their wives.

The case referred to was followed in Peak v. Brinson, 71 Texas, 316, and there is authority to support it.

The importance of having settled and uniform rules for the acquisition and transmission of property can not be too highly estimated; and if an established rule be thought not to be entirely defensible theoretically, it better subserves the public good to adhere to it until such time as the Legislature may change it, than to uproot it by a judicial decision, which in its turn may share the same fate at the hands of succeeding judges.

The rule established by the case of Cannon v. Boutwell has doubtless been recognized by the bar and people as that by which to adjust their rights, and on the faith of it property rights have been acquired.

The Legislature has frequently met since the decision was made, but no statute has been enacted establishing a different rule, and were we inclined to the opinion that a different rule would be more in harmony with existing statutes, which we do not wish to be understood to intimate, still we would feel it our duty to adhere to the rule established, and for this reason now decline to enter into a discussion of it.

The power of attorney not conferring on the husband the power to sell and convey the land, it becomes unnecessary to inquire whether, had the instrument been valid, it would have empowered him to convey the land in exchange for other lands; but we may say that the transaction was not what at common law was technically known as an "exchange," which carried with it incidents which the mutual conveyances now before us would not.

The transaction can receive no aid from the agreement for conveyance of the land made by Byrd R. Rogers on 23d February, 1877, for he was without power to make any agreement which could bind the mother of appellee, or in any manner affect her separate estate.

The third assignment of error, which is argumentative, is as follows:

"The court erred in his conclusion of law marked 3, in which it is held 'that the legal effect of the will of Ann E. Rogers, nor the acts of John S. Rogers, the executor and testamentary guardian, can not legally bind the plaintiff herein, and that therefore there is no such ratification of the deed made under the power of attorney as can affect the rights of plaintiff,' in this:

"1.   The legal effect of the will was to invest the executor and testamentary guardian with large discretionary power, to-wit, 'Power to manage fully decedent's estate, with power to sell any part thereof, and invest it in other property, as might appear to him most conducive to the interest of his said daughter, the plaintiff;' and further, 'that said executor be empowered to surrender my estate hereby delivered to said heir at such time as he may deem proper for her interest.' And all acts done by the said executor within the scope of the powers conferred by the will are binding on the ward and devisee.

"2.   The acts of the executor and testamentary guardian in claiming the property in Caldwell County as the property of decedent's estate by placing it on the inventory and causing it to be duly appraised as a part of decedent's estate, and in taking possession of it in January, 1878, and making it the homestead of himself and plaintiff, and in subsequently conveying 196 acres of the land so inventoried to one Vogle, reciting in said deed that he did so by virtue of the power conferred upon him by the said will (all of which is shown in the findings of facts), was such 'ratification' of the sale and conveyance made to defendant as would bind the plaintiff.

"3.   The findings of fact show that the plaintiff is now and has continued since her majority to retain possession of the Caldwell County land, and has never offered to surrender possession or to convey any title or interest she has to the defendant Cardwell, which acts show ratification on her part, and she is estopped from now repudiating the exchange of property."

The will of Mrs. Rogers was made before the transactions occurred out of which grew this litigation, and by its express terms the land in controversy was devised to appellee, then a child in her eleventh year, and it can not be claimed that there is any provision in the will which can by force of its terms give validity to the conveyance under which appellant claims, or within itself vest appellant with title to the land.

So far as the record shows it does not appear that Mrs. Rogers actually knew that her husband had executed the deed under which appellant claims, and it does appear that neither party took possession of the lands conveyed to them until after her death; but if she had known of the transaction, and with her husband had entered upon the land conveyed to her by appellant and there remained until her death, this would not have passed her title to the land in controversy nor have operated as an estoppel.

Under this assignment we understand the proposition to be that the acts of the executor, under the powers conferred on him by the will, amount to a ratification by appellee of the deed under which appellant asserts title, or that his acts estop her.

The power conferred on John S. Rogers was a power, as executor, to manage the estate left to his daughter until such a time as he might deem it to her interest to deliver the estate to her, which it ought not to be presumed was intended to continue after her majority, title to the estate, under the terms of the will, vesting in appellee.

He was given the further power *to sell* any part of the estate desired, and to invest the proceeds in other property, if he deemed it to the interest of appellee to do so.

These powers, however, were conferred with reference to particular property, for Mrs. Rogers specified the particular real estate, doubtless,

as the will declares, understood by her to be all the real estate owned by her, to which the power should apply.

The will must be understood to speak at the time of her death, and thus read, the enumeration in her will of all her real estate, in which was embraced the land in controvesy, while that conveyed to her by appellant was not mentioned, ought to be held sufficient evidence of the fact that she did not know of the transaction between her husband and appellant, or that she did not deem it binding on her, and repudiated it.

In view of the fact that all the lands claimed by the testatrix were enumerated in the will, the power conferred by it on the executor ought to be held to have been intended to be limited to acts to be done in reference to such lands only as she claimed to own, and to exclude any intention to confer on the executor any power whatever over the lands appellant had conveyed to her.

If she did not know the lands had been conveyed to her she could not have intended to confer a power on him to manage or sell them; and if she knew of the conveyance but repudiated it, she could not have intended the power conferred on the executor to extend to lands not embraced in the will.

The fact that appellee may have been the sole devisee would not affect this question, in view of the fact that all the lands claimed are enumerated in the will.

The will empowered the executor to exercise his best judgment in reference to the property which the testatrix declared should through it vest in her daughter, and if in his judgment it would be to her interest, to *sell it*, or any part of it, and *reinvest* in other property; but this did not confer on him the power by election to bind his daughter by a contract not binding on his wife.

The acts of the executor tend to show that he regarded the conveyance, which as agent he had attempted to make for his wife, as a valid transfer of her right, but the power to determine such a question and bind appellee by his determination was not the power conferred on him by the will.

It is true that the executor might have sold the interest of his daughter in the land in controversy and invested the proceeds in the lands which appellant had conveyed to his wife, which neither she nor her daughter in good conscience could hold; and having power to sell and reinvest, it may be that he could have consummated by proper conveyance the practical exchange of lands he had attempted to make during the life of his wife; but having no power under the will to bind appellee by his mere election, he could accomplish this only through the exercise of the power to sell conferred on him by the will.

Title of appellee never having been thus divested nor divested by her own act, we do not perceive on what reasonable ground she can be held

to have lost her right to assert the title which vested in her under the will, by reason of any act of the executor.

If after majority appellee, with a full knowledge of all the facts, had elected to hold the lands conveyed to her mother by appellant, on the clearest principles of right she ought to be held bound by such election and denied the right to recover the land in controversy, invalid though the attempted conveyance from her mother was. The facts do not show such an election. She was a minor when her mother died, and so continued until less than seven months before this suit was brought.

She resided on the land conveyed to her mother as a member of her father's family, with her uncle and aunt, who were legally entitled to occupy the land. Her father was the guardian of her person and had the right to determine where she should reside.

It is not shown that she has received any part of the money for which the executor and Byrd R. Rogers and wife sold part of the land conveyed by appellant to her mother and aunt, nor that she has claimed or accepted as owner or otherwise any benefit therefrom.

Were the conveyance which her father attempted to make for her mother one made by herself during minority, and for this reason voidable, it could not be held that she did not repudiate it within a reasonable time after majority.

The conveyance, however, under which appellant claims, in so far as it purports to bind the mother of appellee, is void, and nothing short of some affirmative act on part of appellee divesting her title or in conscience forbidding her assertion of it can defeat her right to recover.

Appellee is but seeking the enforcement of a legal right, and under her pleadings, had appellant requested it, the court below would no doubt have vested in him the title to the interest in the land he conveyed to her mother, and we would not feel authorized to reverse the judgment because she did not tender a reconveyance, which under the facts it is very doubtful if she was under any obligation to do.

A claim was made by appellant for the value of improvements made by him on the lands in controversy, but the record does not show that such evidence was introduced as would have enabled the court to have done this. Under the facts of this case we are of opinion that appellant is entitled to have compensation for improvements made in good faith on the land under the general rules applicable to that subject, although made by a tenant in common, that fact being given proper effect; but the parties may have thought that all equities thus resulting might be adjusted in a partition of the land hereafter to be made. That the court did not dispose of that matter is not assigned as error; in fact all the assignments go to the rulings on the question of title.

We find no error in the judgment, and it will be affirmed, without preju-

dice to the right of appellant hereafter to have an adjustment of any equities growing out of improvements made by him on the land in conversy.

*Affirmed.*

Delivered January 17, 1890.