SHIP CHANNEL DEVELOPMENT CO. v. GLOVER. (No. 8802.)

(Court of Civil Appeals of Texas. Galveston, Nov. 25, 1925. Rehearing Granted by Agreement, and Appeal Dismissed Feb. 4, 1926.)

1. Vendor and purchaser ⬉95(1) — Vendor held estopped to terminate and cancel contract for sale of property for development purposes because of comparatively small departures from its requirements, not willful, and not shown to have resulted in damage or inconvenience to vendor.

Vendor of property, received under will from wife, and sold to defendant under contract for development and sale in small portions, *held* estopped to deny validity of contract for comparatively small departures from its requirements, which were neither willful nor shown to have resulted in damage or inconvenience to vendor, irrespective of whether such contract was valid as against vendor's wife during her lifetime, where much of consideration moving to vendor under contract had been already performed, and time was not of the essence.

2. Contracts ⬉318.

Forfeitures are not favored.

3. Specific performance ⬉6—Contract for sale of property for development purposes held not to lack mutuality in remedies.

Contract for sale of property for development purposes, requiring purchaser to pay all expenses for development and to spend specified amount therefor, and obligating it to sell a certain number of lots and to pay part of sale price to vendors, and authorizing vendors to terminate contract at any time for purchaser's breach, *held* not to lack mutuality in remedies.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the Ship Channel Development Company against F. S. Glover. From an adverse judgment, plaintiff appeals. Reversed and rendered, but, on rehearing by agreement, appeal was dismissed.

Ward & Ward and J. S. Bracewell, all of Houston, for appellant.

William Glover and Andrews, Streetman, Logue & Mobley, all of Houston, for appellee.

GRAVES, J. There was a contract of date August 31, 1922, between appellant and Mr. and Mrs. Glover for the subdivision and sale of 32 acres of land, under which appellant

sought in this suit a temporary injunction against Mr. Glover, restraining him—

"from in any manner asserting right or title to said property other than as specified in his said contract, and that he be restrained from canceling plaintiff's said contract or asserting that same is canceled; that he be restrained from in any manner interfering with plaintiff's said purchasers or those who may hereafter purchase under the terms of said contract, and from collecting money from them upon such contract; that he be restrained from selling or offering to sell, or advertising for sale, any of said lots covered by said contract; that he be required to execute a deed of conveyance to all such purchasers who may complete the terms of their said contract."

There was a hearing had upon the application, after which the trial court entered an order, the material portion of which is this:

"The court is of the opinion that all of the temporary relief, including plaintiff's prayer for a temporary injunction, or in the alternative a receivership during the pendency of this suit, should be in all things denied except as is hereafter decreed.

"It is therefore considered, and so ordered, adjudged, and decreed by the court, that all of the temporary relief during the pendency of this suit prayed for by plaintiff, be, and the same is hereby, in all things denied, with the exception that, upon the plaintiff filing herein its bond in the sum of $1,000, with two or more sureties to be approved by the clerk of this court, the defendant, F. S. Glover, both individually and as independent executor of the estate of Nannie J. Glover, deceased, be, and he is hereby, restrained and enjoined during the pendency of this suit from further interfering with the plaintiff in the collection of all sums of money that may be due or become due on any contracts of sale made and executed by the plaintiff prior to February 16, 1925, and also from further interfering with the plaintiff in the collection of any sums of money due or to become due on any other contracts of sale made by the plaintiff subsequent to February 16, 1925, and upon which the defendant has accepted any sums of money heretofore, and the defendant, F. S. Glover, individually and as such executor, shall be further enjoined during the pendency of this suit, either himself or through any other persons, from notifying such persons so entering into contracts of purchase through the plaintiff prior to February 16, 1925, or subsequent thereto, in such cases where said defendant has accepted contracts made by the plaintiff, that the plaintiff is not entitled to make such collections; and, further, from attempting to induce any of such persons to forfeit or discontinue such contract or enter into contracts direct with defendant in lieu thereof."

The appeal proceeds from the action in thus refusing appellant the relief it prayed for, except as specified in the quoted part of the judgment.

We think the court below erred in not awarding appellant the full measure of what it so asked for.

The evidence heard was confined to the sworn pleadings of the parties, affidavits, and other documents, no oral testimony being used. What this court regards as the controlling facts were these: The land, being 32.89 acres out of the T. W. Pierce subdivision of the John R. Harris survey in the town of Harrisburg, Tex., was the separate property of Mrs. Glover, and both she and her husband the appellee here, duly signed, and for nearly a year acted under, the contract for its development with appellant during her lifetime; she dying in July, 1923, and the appellee alone continuing such execution until February 16, 1925, when he essayed to abrogate it by giving appellant written notice of its termination.

The main provisions of this contract were: The development company was to subdivide the tract into lots and sell them according to an agreed plat and schedule of prices, the aggregate net sum to go to the Glovers being $29,729.27; was to pay all expenses of every kind incident to the subdivision, extension, improvement, and sale of the property, inclusive of all state, county, city and school district taxes (except those for 1922, which were to be prorated) before they should become delinquent, and was to spend for development a minimum of $2,000, $750 of it within the first 10 months; also specifically obligating itself to sell at least 30 lots the first year and 36 the second. Installment plan sales were contemplated; the company agreeing to keep accurate records of all transactions, to furnish appellee and wife an accurate report thereof not later than the 10th day of each month, together with remittance for their part of the collections, which was fixed at one-fourth of the cash payments and one-third of the deferred monthly payments, appellant to retain the balance. The Glovers were to furnish such an abstract of title to the land as would enable the other party to obtain a certificate of title guaranty from any reputable company in that business in Houston, and, when as much as one-half of the schedule price of any lot had been paid to them by the purchaser thereof, were, at the option of both parties, to execute a deed thereto and accept a vendor's lien note for the balance due thereon as a cash payment. The development company was to conduct the sales in its own name under an attached form, being given express authority to bind appellee and wife to the terms of the sales, but was to enter into no agreement whereby longer than four years would be required for them to get their scheduled price for any one lot. The life of the contract was fixed at four years, and it was further specifically provided that failure on appellant's part to sell the prescribed number of lots, or render the monthly reports along with the remittances, or to perform any of the agreed terms, conditions, or covenants, should give the Glovers the right to terminate it at any time, in

which event they were not to be liable to appellant for any sums it may have spent, for improvements on the property or in preparing it for sale.

As already indicated, there was immediate and continued mutual execution of this undertaking between all the parties to it from August 31, 1922, until the death of Mrs. Glover on July 10, 1923, and from that date on till February 16, 1925, between Mr. Glover alone and the development company. On this last date Mr. Glover, by letter, notified the company that the contract was in all things canceled and terminated, assigning as reasons that it had violated the same in the following particulars: (1) The monthly payment for January, 1925, had been made to him on the 11th instead of the 10th day of the month, as provided; (2) the development company had made sales contracts under which the purchasers would require longer than four years within which to pay out their lots; (3) that it had failed to pay taxes on the property for the year 1924 before they became delinquent.

This notice found appellant in midstream of its efforts to carry out the enterprise. It had written 150 sales contracts in the subdivision, had improved the property much more than had been contemplated under the agreement, having during the first year spent $2,985 instead of the stipulated $750. It had graded and shelled 5,475 feet of streets, laid 2,450 feet of sewerage, installing in connection therewith a modern septic tank, and had at its own expense of $470 induced the city of Harrisburg to place a sewer line along one of its streets. It had also laid and paid for 3,550 feet of galvanized water mains, having in all expended for improvements on the property $7,865.64. In addition, for more than two years, it had made strenuous efforts to sell, extensively advertising the tract under aeroplane and photographic views, and in other ways, at the same time putting in ditches and culverts, doing surveying, paying taxes, etc., all at a further cost of $9,415.79, making a total of $17,281.43 spent in improving, advertising, and putting the subdivision on the market. Its net portion of the sales up to that time had been only $2,326.43, leaving as of December 31, 1924, a balance of expenditures over receipts of $14,955.

Mrs. Glover left a will, under the terms of which this property, along with all the rest of her estate, went to her husband, the appellee, for life, and at his death was to go to her children in equal parts. He was also made sole and independent executor without bond, and, among others, was given these plenary powers:

"It is my will and desire that so long as he shall live, he shall have, hold and possess my said estate and be entitled to the use and enjoyment of the same and that he shall have without condition all income from my estate to use as he may desire, and if necessary, for his proper support and maintenance he shall use such portion of the corpus of my estate as he may desire."

"I especially will and direct that my estate shall not be distributed so long as my husband Frank S. Glover shall live; that during his lifetime said estate shall be held by my executor and managed and controlled by him; that he shall pay to himself, for his sole personal use and benefit, from time to time as it accrues all of the income from my said estate and if necessary that he shall pay to himself and take for his sole personal use and benefit such proportion of the corpus of the property as will comfortably support and maintain him."

As concerns the asserted reasons for declaring the contract at an end, these attending extenuating circumstances reasonably appear: (1) The 1924 taxes, while not paid before becoming delinquent, were all paid during the month of March, the short delay being accounted for by the absence of appellant's manager and the failure of its depository bank, and the appellee having suffered no damage or inconvenience on account of it; further, he himself had failed to pay delinquent taxes for years prior to this contract, and thereby seriously hindered appellant in making sales. (2) The failure of the appellee to receive the one remittance complained of on the 10th day of the month was purely an oversight; he having received and accepted it on the next day without complaint at the time. (3) If the appellee had not in fact expressly waived the provision prohibiting sales in which entire payment would not be complete within four years, their dealings with reference to that matter justified the appellant in believing that he had, in that, following its letter of explanation to him about it of date September 29, 1924, appellee acquiesced in contracts being so written and accepted moneys paid thereon, making no further complaint in that respect from that date until the notice of cancellation was given.

[1] We think this long-continued course of dealing under, and acceptance of, the benefits flowing from the contract, especially after he became dowered with the individual rights he received under the will of his wife, estopped him from now either denying the binding effect of the contract upon himself, or having it terminated upon grounds so frail in substance and so scant in equities, irrespective of whether or not it was valid as against his wife during her lifetime.

This record fails to show that she ever raised any objection to it, and, under the recent holding of our Supreme Court in Gohlman, Lester & Co. v. Whittle, 273 S. W. 808, we are not sure it would have been availing, if she had. In view, however, of the conclusion that her husband was bound anyway, it is unnecessary to decide that question.

[2, 3] The oft-repeated general doctrine of the law that forfeitures are not favored has fitting application here, where much of the consideration moving to the appellee under

the contract involved had been already performed, where by its terms time was not made the essence of it, and where the comparatively small departures from its requirements were neither willful nor shown to have resulted in either damage or inconvenience to the other party; for the same reason also it is not thought that any lack of mutuality in remedies existed.

We therefore conclude that neither the case of Cardwell v. Rogers, 12 S. W. 1006, 76 Tex. 37, nor Galbreath v. Farrell (Tex. Civ. App.) 249 S. W. 277, rules the one at bar. In the former it did not appear either that the executor was an independent one or that he had any individual interest in the property, while in the latter no loss to the plaintiff appeared, in that he had performed no part of the principal consideration to the defendant; that is, that he should manage and supervise the operation of the gravel pit. These features distinguish both those cases from this one.

Upon these conclusions, the trial court's judgment has been reversed, and this court's decree has been entered, granting appellant's prayer for the relief it sought below.

Reversed and rendered.

Memo.—Rehearing was granted by agreement of parties, and appeal dismissed February 4, 1926.