## A. WHITE v. J. M. SIMONTON ET AL.

### Decided February 10, 1904.

**1.—Assignment of Error—Special Findings.**

Assignments of error, based on the overruling of objections to evidence and of a motion for new trial and the refusal of requested instructions, presenting the claim that a deed to the daughter of grantor conveying certain land, etc., as constituting "fully her pro rata share of my estate, real and personal," embraced, in law, only her share of the interest of the grantor in the community property of himself and his deceased wife, and could not be shown by parol evidence to have been intended as a satisfaction of her entire interest in the community property, should be considered, though no attack was made on a special finding of the jury, upon such evidence, that by "my estate" the grantor meant "the entire community estate."

**2.—Trespass to Try Title—Pleading—Deed—Mistake.**

Under a petition in the ordinary form of trespass to try title, a deed to a granddaughter of grantor named therein as "Willis" may be shown to have been so made by mistake, and intended for his granddaughter "Willie."

**3.—Deed—Estate for Life—Remainder to Children.**

The ruling in Simonton v. White, 93 Texas, 50, on former appeal of this case, as to the effect of a deed for life with remainder to the heirs of the body of grantee, followed.

**4.—Community Property—Married Woman—Estoppel.**

A married woman inheriting a part of the interest of her deceased mother in community property, and receiving from her father a deed to land, in full satisfaction of her interest in his estate, which conveyed to her for life only, with remainder to the heirs of her body, was not estopped by parol evidence showing that she and her sisters, to whom the father also made conveyances, accepted those deeds as full settlement by the father for their entire interest in the community property; as to the interest inherited from her mother, her absolute title could not be reduced to a life interest by such estoppel; and her conveyance, joined by her husband, passed title in fee to such interest derived from the mother though the deed from the father limited her to a life estate.

**5.—Attorney—Minor—Pleading.**

The attorney for minor litigants could not have judgment awarding them one-half of the real estate recovered for their clients, where they were not made parties to the suit and had no pleadings entitling them to such relief.

Appeal from the District Court of Milam. Tried below before Hon. J. C. Scott.

Judge Streetman, having been of counsel, did not sit; and Robert G. West, Esq., was commissioned as Special Associate Justice in his place.

*Henderson, Streetman & Freeman,* for appellant.

*Monta J. Moore* and *L. C. McBride,* for appellees.

WEST, SPECIAL ASSOCIATE JUSTICE.—This is an action of trespass to try title for 200 acres of land in Milam County. This is the third appeal. See 49 S. W. Rep., 269; 67 S. W. Rep., 1000; 93 Texas, 50. Upon the last trial the cause was submitted to the jury upon special issues, and judgment was rendered in favor of the appellees for the land and for $470 rent, against the appellant White and the sureties on his replevy bond, the land having been sequestered by the appellees and replevied by the appellant. The judgment also contains recitals to the

effect that it having been made to appear that the attorneys for appellees have a one-half interest in the recovery and judgment awarded to the appellees, and that their claim and interest is just, it is decreed that one-half of the judgment and recovery shall inure to their benefit in equal proportions. From this judgment White prosecutes this appeal.

Under our view of the case, the following conclusions of fact only will be necessary:

*Conclusions of Fact.*—1. On September 2, 1892, W. J. Gentry, the father of Mrs. Ava Anna Simonton, and grandfather of the plaintiffs, executed and delivered his deed to the 200 acres of land sued for. This deed is as follows:

"The State of Texas, County of Milam. Know all men by these presents that I, W. J. Gentry, of the county of Milam and State aforesaid, for and in consideration of the love and affection and duty as a father towards my daughter, Ava Anna Simonton, her children, Willis, David, Curry and Prince, have granted as a gift and conveyed by these presents do grant, give and convey unto the said Ava Anna Simonton and her bodily heirs, of the county of Milam and State of Texas, all that certain tract or parcel of land lying and being situated in the county of Milam and being a part of the Reuben Fisher League. [The field notes are omitted.] Now the above described land and premises, together with other valuable stock and property heretofore given, granted, released unto my daughter, the said Ava Anna Simonton, constitute fully her pro rata share of my estate, real and personal. Now the above mentioned land and property hereby conveyed is not to be traded or sold, but the produce of the same are to go to the support of the said Ava Anna Simonton and her family during her natural life, and at her death to be equally and impartially divided between her bodily heirs.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging unto the said Ava Anna Simonton, her bodily heirs forever. And I do hereby bind my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Ava Anna Simonton, her bodily heirs, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand, Baileyville, Texas, 2d day of September, A. D. 1892. W. J. Gentry."

2. On the same day Gentry executed and delivered to his other two daughters, two other deeds of gift, whereby he gave to Mrs. Taylor Zera Gentry 275 acres and to Mrs. Asberry (Mary Gentry) 225 acres. These two deeds contained a recital to the effect that the land was conveyed to the grantee "as her pro rata share of the estate owned and controlled by me" (the grantor).

3. All three tracts of land were the community property of W. J. Gentry and his deceased wife, the latter having died in 1890, intestate.

34 Civ.—?0

The heirs of Gentry and his wife were these three daughters. Gentry himself died in January, 1896. There was no administration on Gentry's estate, nor on that of his wife. The lands given to each of the daughters was of about equal value. Before his death Gentry had given to Mrs. Simonton about $500 worth of personal property.

4. Over objections of appellant it was shown that at the time the three deeds were drawn by Mr. Askew, a notary public and friend of Mr. Gentry, and who was accustomed to draw his papers for him, that Gentry stated that he wanted to draw the deeds up so as to make a division of all the lands owned and controlled by him, and to have the lands conveyed to Mrs. Simonton fixed so that they could not be disposed of by her husband or herself and would go to the children after her death. Gentry wanted to deed away all of his lands, and settled with his three children, and especially with Mrs. Simonton, whose husband threatened litigation, so that she would have no interest in the estate left. It seems that this division of the lands had been talked over between Gentry and his children before the deeds were made, and was satisfactory to all three of the daughters.

5. Mrs. Simonton and her family had been living on the 200 acres of land, cultivating about thirty acres of it, for several years prior to the date of the deed, paying no rent to anyone, and she and her husband remained in possession up to the time that they sold the land, a part to White directly, and a part to one Drennan, from whom White afterwards purchased.

6. The other two daughters took possession of their tracts and all three, as well as their husbands, have acquiesced in the division made by their father, as evidenced by the deeds, and claimed none of the lands, except those deeded to them respectively.

7. Simonton and his wife were anxious to sell the land, and stated to White that the title was good. White had heard that the title was disputed, and before buying he advised with reputable attorneys, and was told that the title was good, and he finally purchased all of the lands by warranty deeds, as already stated, from Simonton and wife, paying therefor about $2500.

*Conclusions of Law.*—1. At the outset appellee's counsel insist that we should ignore all assignments of error, for the reason that the judgment is supported by the special findings of the jury, and no attack was made thereon in the trial court. There might be force in this position if it were borne out by the record. In so far as the deed from Gentry to Mrs. Simonton and her children was concerned, the only issue presented to the jury was whether or not, by the use of the term "my estate," the grantor, Gentry, meant the entire community estate of himself and his deceased wife, or did he mean simply his own interest in the community estate. The jury's reply to this issue was: "He meant the entire community estate." All the testimony, outside of that on the issue of

White's good faith as a purchaser, rents and improvements, was directed to this question.

Appellant objected to any testimony bearing on the matter as varying the terms of the deed, which he claimed was unambiguous. By special charges, he sought to present his phase of the case to the jury, and especially insisted that the deed conveyed only Gentry's individual interest in the community estate. Furthermore, in his motion for new trial he again renewed all these objections, and it was there contended that the finding of the jury was contrary to the evidence. Finally appellant, by a motion, urged that even under the finding of the jury he was still entitled to one-half the land. Inasmuch, therefore, as the record clearly shows that appellant was protesting all the time in the lower court, we think we must examine the assignments.

2. It is contended that judgment should not have been rendered for appellee, Willie Simonton, because she is not named as a grantee in the deed from her grandfather, and in the absence of allegation setting forth the fact, testimony would not be admissible to show that the grantee in the deed named *Willis,* was really *Willie.* We can not assent to this view. The petition alleges her real name as Willie. It is manifest from the deed from the grandfather that the grantees were his grandchildren, the children of his daughter, Mrs. Simonton, and that the name, through mistake of the person who drew the deed, was inserted Willis, instead of Willie. In Stokes v. Riley, 68 S. W. Rep., 704, under a petition in ordinary form of trespass to try title, oral testimony was admitted to show that by mistake the name of A. Z. Reedy was inserted as lessee, when in fact the real name of the lessee was A. Z. Reeder. See also 1 Devlin on Deeds, sec. 209.

3. The main question for our consideration as the case is presented by the record, is, what effect shall be given to the deed from Gentry to Mrs. Simonton and her children, in view of the evidence which shows that it was the purpose of Gentry, notwithstanding the use of the words "my estate," to convey not only his own interest in the land, but that of his deceased wife also.

The Supreme Court in Simonton v. White, 93 Texas, 50, held that the language of this deed placed the title in Mrs. Simonton for life, with remainder in fee to her children, and that if, in violation of the prohibition therein contained against her alienating her life interest, she sought to sell the land, the children could forthwith recover the same. This ruling is binding on us, and hence we overrule all of appellant's assignments seeking to again review this action.

The effect then of the decision of the Supreme Court is to vest title in the appellees as to Gentry's one-half interest in the land, subject, of course, to Mrs. Simonton's life interest; and the only question is as to the title to the other half belonging to his wife, and which at her death became vested in her three daughters, and by the common understanding and conduct between the three in accepting each a tract of land of equal value, was in Mrs. Simonton. In view of the clause in the deeds from

Gentry to her two sisters, viz., "as her pro rata share of the *estate owned and controlled by me,*" while in the Simonton deed the clause was, "constituted fully *her pro rata share of my estate,* real and personal," on the last appeal this court held that the interest of Gentry only was intended and referred to in the deed. 67 S. W. Rep., 1073. This ruling was based on the construction of the three deeds alone, without any other testimony being offered.

Counsel for appellee insist that, in view of the testimony (on the last trial admitted over the objection of appellant) which shows Gentry intended also to convey his wife's interest in the land, and that Mrs. Simonton accepted the deed from her father as survivor in community, as a settlement of her interest in the entire community estate, that this operated to divest her of all prior interest therein, including this 200-acre tract, and that her conduct was such that she elected to take this land, and hence the conveyance covers the entire tract.

Appellant, on the other hand, maintains that the deed from Gentry to Mrs. Simonton and her children is unambiguous and vests title, in any event, only to Gentry's one-half interest; that parol testimony was not admissible to vary or explain its terms; that the evidence failed to show a settlement between Gentry, as survivor in community, and his three children, and especially Mrs. Simonton, and that, in any event, even though the testimony be considered, the conduct of Mrs. Simonton, not being tainted with actual fraud on her part, was not such as would debar her, when joined by her husband, from making conveyance of the interest she inherited from her mother. It is unnecessary, we think, in view of the trend of the decisions of our Supreme and appellate courts, to consider any other question than whether or not Mrs. Simonton was by her conduct estopped from conveying the interest in the land that she inherited from her mother.

The elements essential to the equitable estoppel of a married woman have been so often discussed in the decisions of the Supreme Court that we need not elaborate them here. The evidence, in effect, shows that at the time of the execution of the deed Gentry owned one-half of the land, Mrs. Simonton the remainder. Gentry makes a deed by which it is contended the interest of Mrs. Simonton passes to third parties, her children, save there is given her an inalienable life interest. The effect is to cause her to transfer a large part of her interest in her separate estate to third parties without written conveyance executed by her, and without being joined by her husband, in accordance with the statute. Mrs. Simonton, in order to obtain a life interest in the 100 acres from her father, must give at least part of her land to her children. Can it be legally done in this manner? Can Mrs. Simonton modify or diminish her interest in her separate real property, and transfer a portion thereof to her children by merely accepting this deed from her father?

Is it not, to use the language of Judge Williams in Cauble v. Worsham, 70 S. W. Rep., 738, "only a mistaken attempt to obtain the title of a married woman by an ineffectual method?" Pryor v. Pendleton,

92 Texas, 384, and Grandjean v. City of San Antonio, 91 Texas, 433, it is insisted, are opposed to what we believe is the law in Texas, that a married woman can not be bound by her conduct to have divested herself of title to her separate real estate in the absence of actual fraud, save in the manner prescribed by the statute. Both cases are distinguishable from the one before us. In Pryor v. Pendleton, the married woman accepted by an instrument in writing, in which she was joined by her husband, under the father's will, personal property which she otherwise would not have received. She was not required, as is the case here, if appellees' contention be correct, to surrender at least a part of her separate real estate and turn the same over to third parties.

In Grandjean v. San Antonio, she was held to be estopped from claiming title to her separate property required as a street, as against the city, which contended that she was bound, having received her share of the money awarded under a condemnation proceeding to which she was not a party. The court, however, bases its decision on the right of the city as a public corporation to exercise its power of eminent domain, which only requires that compensation be made, and does not involve the necessity of a written conveyance.

Says the court: "If the rights of the parties were to be determined upon the principles governing conveyances of real estate, the separate property of a married woman, the point would not be difficult to resolve. The rule in this State, as in many other jurisdictions, is that the title of a feme covert to her real estate will neither pass nor be affected by her attempted conveyance, except by a deed duly acknowledged by her upon privy examination and duly certified. Neither a deed not duly acknowledged, nor the reception and appropriation by her of the consideration, nor her subsequent acts showing her acquiescence, nor all these together will estop her from asserting her title. A contrary rule would enable that to be done indirectly which the statute declares shall be done only by a certain method, and would defeat the purpose of the law." See also Stone v. Sledge, 87 Texas, 49; Kellett v. Trice, 95 Texas, 160; Watkins v. Watson, 86 Texas, 194; Cauble v. Worsham, 70 S. W. Rep., 737.

We therefore conclude that, controlled by the weight of authority, and waiving all questions of settlement between Gentry and Mrs. Simonton as to Mrs. Gentry's interest in the land, and conceding that the testimony was admissible to explain what Gentry meant by the words "my estate" in the deed, we must still hold that the conveyance from Mrs. Simonton and her husband, under which the appellant claims, vested title in him to that part of the land which was inherited from her mother.

4. The assignments of error questioning the sequestration proceedings it is unnecessary to consider. Besides, the sureties on appellant's replevy bond have not appealed, and certainly appellant himself can not complain.

The amount of rent may be settled on another basis, in view of our holding that the parties are tenants in common.

5. We hold that that part of the judgment wherein it is decreed that one-half of the recovery in favor of appellees shall inure to the benefit of their attorneys is erroneous. The appellees are all minors, and the attorneys themselves were not before the court as parties, and there is no pleading warranting such finding. In addition, we doubt whether, in any event, the attorneys would be entitled to such relief. Glasgow v. McKinnon, 79 Texas, 117.

The judgment of the District Court is reversed, and judgment is here rendered vesting title to the lands in controversy, one-half in the appellees, subject to the life estate of their mother, and the title to the other half in the appellant, and the cause is remanded to the lower court for the sole purpose of settling questions of rent, improvements and other issues and for partition, if desired.

*Reversed and rendered.*

Writ of error applied for by appellee (Simonton v. White) was refused by the Supreme Court, April 28, 1904.