### WILSON et al. v. SHEAR CO. et al.
### (No. 302.)

(Court of Civil Appeals of Texas. Waco. April 1, 1926. Rehearing Denied May 20, 1926.)

1. **Corporations** 🔑133—**Failure of corporate officer selling stock to comply with request of married woman buyer to have her name entered as record owner, and corporation's failure to issue new certificate in her name, held not a conversion of stock by corporation (Vernon's Sayles' Ann. Civ. St. 1914, art. 1168; Rev. St. 1911, art. 4621, as amended by Acts 33d Leg. [1913] c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4621]).**

Failure of corporate officer selling corporate stock to comply with request of married woman buyer to have her name entered as record owner of stock, and corporation's failure to issue new certificate in her name, *held* not a conversion of stock by corporation, where first transaction took place before amendment to Rev. St. 1911, art. 4621, by Acts 33d Leg. (1913) c. 32 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4621), enlarging married women's rights to control separate property took effect; seller having indorsed certificate in blank, which was customary, buyer having allowed husband to have possession, and he having had new certificate issued in his name under Vernon's Sayles' Ann. Civ. St. 1914, art. 1168.

2. **Trial** 🔑356(7)—**Failure to require jury to answer issues as to whether corporation knew of married woman's ownership of corporate stock alleged converted by corporation at time new certificate was issued to her husband held reversible error.**

In suit for conversion by married woman of corporate stock, for which corporation issued new certificate to her husband, failure of court to require jury to answer issues as to whether corporation knew of her ownership at time new certificate was issued *held* reversible error, since such knowledge would render corporation liable.

3. **Corporations** 🔑133—**Corporation becomes liable, if it negligently fails to exercise ordinary care to protect stockholders in ownership of stock.**

Ordinarily, it is duty of corporation to exercise ordinary care to protect stockholders in ownership of stock, and it becomes liable, if it negligently fails to exercise such care.

4. **Corporations** 🔑428(10) — **Knowledge of corporate officer as to stock becoming separate property of married woman, who bought it cannot be imputed to corporation.**

Knowledge of corporate officer who sold stock which he owned as to its becoming separate property of married woman, who bought it, cannot be imputed to corporation.

5. **Appeal and error** 🔑387(2)—**Appeal will be dismissed, where appeal bond was not filed within 20 days after expiration of 1925 April term of Seventy-Fourth district court (Vernon's Ann. Civ. St. Supp. 1918, art. 30, subd. 74).**

Appeal will be dismissed, where appeal bond was not filed within 20 days after ex-

piration of 1925 April term of Seventy-Fourth district court, which could not, under Vernon's Ann. Civ. St. Supp. 1918, art. 30, subd. 74, continue more than 8 weeks.

6. **Evidence** 🔑41—**Court will take judicial notice that 1925 April term of district court, Seventy-Fourth judicial district could not, and did not, continue more than 8 weeks.**

Court of Civil Appeals will take judicial notice that 1925 April term of district court, Seventy-Fourth judicial district, could not by law continue more than 8 weeks, and did not in fact continue more than 8 weeks.

7. **Evidence** 🔑65—**Court and litigants are chargeable with notice of number of weeks which any term of court may continue.**

Courts and litigants are chargeable with notice of number of weeks which any term of court may continue, though such time were expressly stated in statute fixing term.

Stanford, J., dissenting.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Suit by the Citizens' National Bank of Waco against the Shear Company, in which T. C. Phillips and Mrs. Nettie L. Wilson filed cross-actions; Mrs. Grace J. Witherspoon and others being interpleaded. From the judgment, Mrs. Wilson and others appeal. Affirmed in part, and reversed and remanded in part.

Conway & Scharff, Williams, Williams, McClellan & Lincoln, Spivey & Spivey, and Sam E. Stratton, all of Waco, for appellants.

Williamson & McDonnell, O. L. Stribling, and Allan Sanford, all of Waco, and Wallace & Taylor, and Carden, Starling, Carden & Hemphill, all of Dallas, for appellees.

STANFORD, J. This suit was filed by the Citizens' National Bank of Waco against the Shear Company as sole defendant, and, as set out in its amended pleading, alleged that on May 23, 1921, C. W. Wilson was the owner of certificate No. 16 for 25 shares of the capital stock of the Shear Company, and on said date, in order to secure a loan of $4,000 from said bank, pledged and delivered said certificate of stock to it; that the said C. W. Wilson failed to pay said loan when due, and said bank sold said certificate of stock under its collateral agreement with C. W. Wilson, and became itself the purchaser thereof; that it then presented said certificate of stock to the Shear Company for cancellation, and demanded that said company issue to it a certificate of stock for the same amount, which it refused to do. The Shear Company filed its original answer, which was, in effect, a bill of interpleader, in which it disclaimed any interest in said 25 shares of stock sued for, but alleged that T. C. Phillips and Mrs. Nettie L. Wilson were asserting claim to said stock, and prayed that T. C. Phillips and Mrs. Nettie L. Wilson, together

with her husband, C. W. Wilson, be made parties to the suit, and that the rightful ownership of said stock be determined. T. C. Phillips answered by way of cross-action against the bank, the Shear Company, and Mrs. Wilson alleging that on about May 23, 1920, C. W. Wilson executed and delivered to him a note for $5,000, and, to secure same pledged said certificate No. 16 for 25 shares of stock in the Shear Company, and that afterwards, without fault or negligence on his part, he lost the note and certificate of stock; that same being found was returned to C. W. Wilson; and that Wilson thereafter fraudulently and wrongfully negotiated the stock to plaintiff, the Citizens' National Bank, and he (Phillips) sought judgment establishing the priority of his title and lien to said certificate of stock. Mrs. Wilson answered in the suit by way of cross-action, and asserted title to the 25 shares of stock heretofore mentioned, and also to an additional 25 shares, the whole of which she alleged had been issued in lieu of old certificate No. 112 for 50 shares of stock in the Rotan Grocery Company (the predecessor of the Shear Company), which 50 shares of stock in the Rotan Grocery Company she had previously acquired as her separate property, and sought to recover against the Shear Company said stock or its value, with 6 per cent. interest from October 1, 1916. After the filing of the answer of Mrs. Wilson, the Shear Company interpleaded Mrs. Grace J. Witherspoon, Andrew J. Witherspoon, and R. O. Silvers, alleging they claimed an interest in the stock in question. Pending the suit, Mrs. Wilson was divorced from her husband, C. W. Wilson, and he was dismissed from the suit. There were other pleadings and supplemental pleadings, the case finally resolving itself into two cases, or two main issues, one between T. C. Phillips and the Citizens' National Bank as to their respective rights to certificate No. 16 for 25 shares of stock in the Shear Company; the other was between Mrs. Wilson and the Shear Company, as to whether or not Mrs. Wilson was entitled to recover of the Shear Company certificate No. 112 for 50 shares of the Rotan Grocery Company, purchased in 1913, and alleged to have been her separate property, or the value of said shares.

The issues and the facts bearing upon same will appear more fully in the course of our opinion. The court instructed a verdict in favor of Mrs. Grace Witherspoon, R. O. Silvers, T. C. Phillips, and the Citizens' National Bank as against Mrs. Wilson, and submitted the case on special issues as between T. C. Phillips and the Citizens' National Bank, and also as between Mrs. Wilson and the Shear Company. In view of the disposition we have decided must be made of the case as between T. C. Phillips and the Citizens' National Bank, it is unnecessary to set out the findings of the jury as between said parties.

To the issues submitted as between Mrs. Wilson and the Shear Company the jury made the following findings:

"(9) The defendant Mrs. Nettie L. Wilson did, on or about February 3, 1913, or subsequent thereto, acquire as her separate property 50 shares of stock in the Rotan Grocery Company, evidenced by certificate No. 112 in said corporation.

"(10) Said stock at the time of the alleged sale was owned by H. H. Shear.

"(11) Did the Shear Company, at the date of the issuance to C. W. Wilson of certificates Nos. 13 to 16, inclusive, in the Shear Company, through its president, H. H. Shear, or its other officers, have knowledge or notice that the stock evidenced by certificate No. 112 in the Rotan Grocery Company was the separate property of the defendant Mrs. Nettie L. Wilson? (Not answered.)

"(12) At the time of the purchase of the stock evidenced by certificate No. 112, Mrs. Nettie L. Wilson did request Mr. H. H. Shear, as president, to enter said defendant Mrs. Nettie L. Wilson's name as holder and owner of said shares of the capital stock in said Rotan Grocery Company on the books of said company.

"(13) The failure or refusal of said company to enter the name of Mrs. Nettie L. Wilson as a holder and owner of the 50 shares of capital stock on the books of said company was not a proximate cause for C. W. Wilson's disposing of same.

"(14) Mrs. Nettie L. Wilson, defendant, at the time of the purchase of said stock evidenced by certificate No. 112, did request the said H. H. Shear, as president, to issue said certificate in her name.

"(15) Such failure or refusal to issue said certificate in the name of Mrs. Nettie L. Wilson was not a proximate cause of the disposal of said stock by C. W. Wilson.

"(16) The reasonable market value per share of the capital stock of the Rotan Grocery Company on February 3, 1913, was $300 per share.

"(17) The reasonable market value per share of the capital stock of the Shear Company on October 1, 1916, was about $300.

"(18) The reasonable market value per share of the capital stock of the Shear Company on October 21, 1916, was about $300.

"Special issue No. 7, requested by the Shear Company: Did The Shear Company, at the time it issued certificates Nos. 13 to 16, inclusive, to C. W. Wilson, know, or did it have notice, that C. W. Wilson was not entitled to have certificate No. 112 of the Rotan Grocery Company canceled, and said new certificates of stock in the Shear Company issued in his name in lieu thereof? (Not answered.)"

"Special issue No. 9, requested by the Shear Company: Mrs. Nettie L. Wilson was negligent in the exercise of control and possession of certificate No. 112 of the Rotan Grocery Company, and also such negligence was the proximate cause of the issuance of new certificates in the Shear Company in lieu of cer-

tificate No. 112 of the Rotan Grocery Company to C. W. Wilson."

The court entered judgment in favor of the Citizens' National Bank and against T. C. Phillips and Mrs. Wilson, and also in favor of the Shear Company against Mrs. Wilson. We will consider the latter branch of the case first.

### Opinion.

Under Mrs. Wilson's first assignment, she contends that, by virtue of the answers of the jury to special issues 9, 12, 14, and 16, she was entitled to judgment against the Shear Company for the value of certificate No. 112 for 50 shares of stock in the Rotan Grocery Company. It is true the jury, in response to said issues, found that said stock, purchased on February 3, 1913, became her separate property; that she requested H. H. Shear, as president of the Rotan Grocery Company, to have her name entered on the books of said company as the owner of said stock; that she did request H. H. Shear, as president of said company, to have said certificate issued in her name; and that said 50 shares were of the value of $300 per share. Were these findings sufficient to authorize the trial court to disregard other findings unfavorable to her and render judgment for her on said favorable findings?

The record discloses that said stock had been issued to H. H. Shear by the Rotan Grocery Company on January 3, 1913, and that H. H. Shear was the record owner of said stock; that, before the purchase of said stock, Mrs. Wilson and husband borrowed $13,000 from the Citizens' National Bank, and executed their joint note therefor, with the agreement with said bank that said stock, when purchased, would be pledged with said bank to secure said note, said $13,000 to be used in paying for said stock. It is further shown, without any conflict, that the Citizens' National Bank, in order to use said stock as collateral, required same to be indorsed in blank by the record owner; that Mrs. Wilson and husband, C. W. Wilson, were husband and wife, and had been so for many years, and so continued to be up until 1923, each having full faith and confidence in the other; that, at the time said certificate was purchased, both Mrs. Wilson and husband were present, and Mrs. Wilson directed Mr. Shear to deliver said stock to her husband, to be by him delivered to the Citizens' National Bank as collateral security for said $13,000 note. Said certificate of stock No. 112 was indorsed in blank by H. H. Shear, and delivered to C. W. Wilson, and by him delivered to the Citizens' National Bank, and attached to said $13,000 note as collateral security, where it remained for about three years; said note being renewed probably a dozen times, both Mr. and Mrs. Wilson signing each of said renewal notes and said stock attached to each of said re-

newal notes. About October 1, 1916, the Rotan Grocery Company, by an amendment to its charter, increased its capital stock $100,000, and changed its name to the Shear Company. C. W. Wilson subscribed for 150 shares of this increase stock, and paid the cash therefor, and at the same time presented certificate No. 112 for 50 shares of the Rotan Grocery Company, indorsed in blank by H. H. Shear, the record owner, and requested the Shear Company to issue to him 200 shares of the Shear Company stock, and said company did issue to C. W. Wilson certificate No. 13 for 100 shares, certificate No. 14 for 50 shares, certificate No. 15 for 25 shares, and No. 16 for 25 shares. C. W. Wilson then sold 175 shares of said stock to T. S. Witherspoon for $50,000, and from the money thus obtained made the final payment of $3,065.95, liquidating said $13,000 note to the Citizens' National Bank. Mrs. Wilson had permitted her husband to have the exclusive control and management of said certificate No. 112 and of the matter of collecting dividends on said original certificate No. 112 in the Rotan Grocery Company, and the stock issued in lieu of same by the Shear Company, from February 3, 1913, up until about the time this suit was filed, January 1, 1923, and had received from her husband, according to her evidence, dividends on said stock, amounting to about $6,500. She was present at the time the final payment was made on the $13,000 note at the Citizens' National Bank, but never at any time attempted to take possession or control of said stock. There is no evidence in the record of any fraud or collusion on the part of the Rotan Grocery Company or the Shear Company with C. W. Wilson or any one else in reference to said certificate, and no evidence that either of said corporations did reap, or attempted to reap, any benefit whatever from said stock after its sale in February, 1913; but the record indicates that both corporations and H. H. Shear acted in the utmost good faith in reference to said stock. H. H. Shear died before this controversy arose, and so his evidence was not available.

[1] As we understand, Mrs. Wilson's first contention is that the failure of H. H. Shear to comply with her request, on the purchase of certificate No. 112 on February 3, 1913, to have her name entered on the books of the Rotan Grocery Company as the record owner of said stock, and his failure to have a new certificate issued in her name, amounted, in effect, to a conversion of said stock by the Rotan Grocery Company. There are several reasons why we think this position is untenable. Article 1168, Vernon's Sayles' Statutes, provides:

"The stock of any corporation created under this title shall be deemed personal estate, and shall be transferable only on the books of the corporation in such manner as the by-laws may prescribe."

In pursuance of this article and the by-laws of the Rotan Grocery Company, said corporation had printed in the face of all its certificates of stock, including certificate No. 112, the following:

"Transferable only on the books of the company in person or by attorney upon the surrender of this certificate properly indorsed."

There is no evidence that certificate No. 112 was ever tendered to the Rotan Grocery Company for surrender and cancellation with request for a new certificate by any one. It was shown to be the custom on the sale of stock for the record owner to indorse same in blank and deliver it to the purchaser, whereupon title to same would pass from hand to hand by delivery, and any holder had the privilege of surrendering and having it canceled and a new certificate issued in his name. After this certificate had been indorsed in blank by H. H. Shear and delivered to C. W. Wilson, he or his wife could have surrendered same, and had it canceled and a new one issued to Mrs. Wilson or her husband, and, we think, this was the only regular and proper way for either of them to become the record owner of said certificate, as per the printed indorsement on the face of same. Again, if a new certificate had been issued to Mrs. Wilson, and she thereby became the record owner, according to the evidence, in order to use same as collateral at the bank, she would have been required to indorse same in blank, and so would not probably have been in any better position to protect her stock, if it was hers.

Again, the amendment to what is now article 4621, enlarging the rights of married women to control over their separate property, did not take effect until March 21, 1913, so, under said statute as it existed in February, 1913, the sole possession, control, and management of the wife's separate property, both real and personal, was, by statute, given to her husband. She could not make a contract even affecting her separate personal property, except for necessaries, without the consent of her husband. Under the old statute in effect in February, 1913, by her marriage she lost all right to the possession and control of her property, except by permission of her husband, and then it was his control through her as agent. So at the time certificate of stock No. 112 was purchased by the Wilsons from H. H. Shear, Mrs. Wilson, if the stock so purchased did become hers, could not make such purchase, except with the consent and approval of her husband, and by virtue of the authority conferred by him upon her to do so. National Fire Ins. Co. v. Wagley (Tex. Civ. App.) 68 S. W. 819; Coleman v. First Nat. Bank, 17 Tex. Civ. App. 132, 43 S. W. 938; Coleman v. First Nat. Bank, 94 Tex. 605, 63 S. W. 867, 86 Am. St. Rep. 871; Bledsoe v. Fitts, 47 Tex. Civ. App. 578, 105 S. W. 1142 (writ denied). So, we think, if said

stock was hers, although Mrs. Wilson requested H. H. Shear to have her name entered on the books of the corporation as the owner of said stock, and to have a new certificate issued in her name, yet her husband, as the sole manager of her property, under the statutes then in force, had the right to waive compliance with said requests, and did waive same by accepting said certificate indorsed in blank by H. H. Shear; and especially is this true in view of the fact that he immediately delivered said certificate to the bank as collateral, as his wife instructed, and she received the benefit of said certificate as collateral to said $13,000 note for nearly three years, and received dividends on said stock and other stock issued in lieu of it, and, as we think, was chargeable with notice of the manner in which it was indorsed. In addition to the finding of the jury to the effect that Mrs. Wilson did request H. H. Shear, president of the Rotan Grocery Company, to have her name entered on the books of said corporation as the owner of said stock, the jury found, further, that the failure of said corporation to have her name so entered on the books of the corporation was not a proximate cause of C. W. Wilson's disposing of said stock, and, in addition to the finding that Mrs. Wilson did request H. H. Shear, as president, to have said stock issued in her name, the jury also found that such failure or refusal to have said certificate issued in her name was not a proximate cause of the disposal of said stock by C. W. Wilson. In view of these findings adverse to Mrs. Wilson, we think the trial court was not authorized to disregard said adverse findings and to render judgment for her on said favorable findings. As we view the case, there are no facts arising out of the transaction of 1913 in the purchase of the stock from H. H. Shear that could constitute any basis for a recovery by Mrs. Wilson against the Shear Company, and that said transaction is unimportant, except in so far as it may, if it does so, affect the transaction of October, 1916, hereafter discussed. We overrule appellant Mrs. Wilson's first assignment.

[2] Under other assignments, appellant Mrs. Wilson contends the trial court committed reversible error in entering judgment for the Shear Company without the jury having answered special issue No. 11 and special issue No. 7 requested by the Shear Company. The case was tried on the theory, on the part of Mrs. Wilson, that the Rotan Grocery Company converted her stock, first, by refusing to issue said stock to her and in her name in February, 1913, and, second, the Shear Company converted said certificate No. 112 on October 1, 1916, by canceling said certificate and reissuing to C. W. Wilson, having notice at said time that said stock belonged to her. The principal theory of the defense, as we understand it, especially as to

the transaction of October, 1916, was that the Shear Company at said time had no knowledge that certificate No. 112 of the Rotan Grocery Company belonged to Mrs. Wilson; and that, if it was her stock, by reason of the negligence of Mrs. Wilson in the possession and control of her stock—having clothed her husband with all the indicia of ownership—the Shear Company was led to believe it was C. W. Wilson's stock, etc. The written indorsement on the face of said certificate, under the facts of this case, was equivalent to a written order by H. H. Shear, the record owner of said certificate, to said corporation to cancel said certificate when presented therefor and reissue to the holder, and, when C. W. Wilson presented said certificate, duly indorsed in blank, for cancellation and reissue, if it had no notice of Mrs. Wilson's ownership, if any, it was the legal duty of the Shear Company to comply with said request, and it could not be guilty of any negligence in so doing, unless said corporation at said time had notice that Mrs. Wilson was the equitable owner of said certificate. U. S. Fidelity & Guaranty Co. v. Ramey (Tex. Civ. App.) 261 S. W. 503. As above stated, in addition to finding that the failure of H. H. Shear to have Mrs. Wilson's name entered on the books of the Rotan Grocery Company as the owner of said certificate was not the proximate cause of C. W. Wilson's disposing of same, and the failure of H. H. Shear as president of said company to have said certificate issued in the name of Mrs. Wilson was not the proximate cause of the disposal of said stock by C. W. Wilson, the jury, in response to special issue No. 9 requested by the Shear Company, found that Mrs. Wilson was negligent in the exercise of control and possession of said certificate No. 112, and also that such negligence was the proximate cause of the issuance of new certificates in lieu of No. 112 to C. W. Wilson. These findings, construed in the light of the issues as made by the pleadings and evidence, we think, are inferentially and indirectly equivalent to a finding that the Shear Company, at the time it reissued said stock to C. W. Wilson in October, 1916, did not have notice of Mrs. Wilson's equitable ownership of same, and we think if the two unanswered issues, issue No. 11 and requested issue No 7, had been answered by the jury favorable to Mrs. Wilson, then indirectly and inferentially, the answers to said last-mentioned issues would have been contradictory of the answers that were made to issues 13, 15, and requested issue No. 9.

[3, 4] Ordinarily, it is the duty of a corporation to exercise ordinary care to protect its stockholders in the ownership of stock in such corporation, and, if such corporation negligently fails to exercise such care, it becomes liable. U. S. Fidelity & Guaranty Co.

v. Ramey (Tex. Civ. App.) 261 S. W. 503; 14 C. J. 772, §§ 1174, 1175; Fletcher Cyc. Corps. § 3844; Baker v. Wasson, 53 Tex. 150. But in this case both corporations handled certificate No. 112, including the cancellation and reissuance to C. W. Wilson, strictly in accordance with the by-laws of said corporation, printed on the face of said certificate, and there is no evidence of any negligence on the part of the Shear Company in canceling and reissuing said certificate to C. W. Wilson on October 1, 1916, unless at said time the Shear Company had knowledge that Mrs. Wilson was at said time the equitable owner, and, if said company had such knowledge at said time, this fact of itself would, we think, render said company liable, regardless of the question of negligence. And so we think the ultimate controlling issue in this case which should determine the liability or nonliability of the Shear Company is whether or not said company, on October 1, 1916, at the time it canceled and reissued certificate No. 112 to C. W. Wilson, had notice that Mrs. Wilson was the equitable owner of said certificate. The matters set forth in requested issue No. 9 with reference to Mrs. Wilson's exercise of possession and control of said certificate, and, in fact, her entire conduct with reference to said certificate, are matters proper for consideration by the jury in determining the question of notice, if any, of the Shear Company at the time it canceled and reissued to C. W. Wilson, in that said matters, we think, were proper for consideration in determining whether the Shear Company was thereby led to believe that C. W. Wilson, on October 1, 1916, was the owner of said certificate on said date, even if the Rotan Grocery Company had learned in February, 1913, that Mrs. Wilson was then the equitable owner; but we think these matters were probably only evidentiary in their nature, and did not present any ultimate controlling issue. If issue No. 11 and requested issue No. 7 had been answered by the jury, regardless of whether answered in the affirmative or negative, then we think the answer to requested issue No. 9 would have been unimportant. So we think that, these two issues having been submitted, and presenting material issues, the trial court should have required them to be answered, and for the error of the court in rendering judgment in favor of the Shear Company without requiring these issues to be answered this branch of the case will have to be reversed and remanded. On another trial, if the evidence should be practically the same as on the last, and the court decides to submit same on special issues, then we think the court, in addition to submitting the issues as to whether or not certificate No. 112, by the purchase of February 3, 1913, became the separate property of Mrs. Wilson or the com-

munity property of herself and husband, and whether said certificate at the time of said sale was the property of the Rotan Grocery Company or H. H. Shear, should also, in addition to these and other issues that may be necessary, by appropriate issues have the jury find whether or not at the time the Shear Company canceled certificate No. 112, and reissued same to C. W. Wilson about October 1, 1916, said corporation knew that said certificate belonged, if it did, to Mrs. Wilson, and, in this connection, we think the trial court should instruct, in effect, that, if they find that certificate No. 112 in the Rotan Grocery Company was the property of H. H. Shear, then and in that event no information acquired by H. H. Shear while engaged in the sale of said stock, as to its becoming Mrs. Wilson's separate property, if it did so, could be chargeable or imputed to the Rotan Grocery Company, and that no notice or information of such fact, if any, acquired by any officer or agent of the Rotan Grocery Company could be imputed to said corporation, unless such notice or information was acquired by said officer or agent while in the performance of his duties to said corporation. Kauffman & Runge v. Robey, 60 Tex. 308, 48 Am. Rep. 264; Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028; Texas Loan Agency v. Taylor et al., 88 Tex. 47, 29 S. W. 1057; Smith v. Smith, 23 Tex. Civ. App. 304, 55 S. W. 546; Cooper v. Ford, 29 Tex. Civ. App. 253, 69 S. W. 487; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S. W. 975.

[5-7] On the other branch of this case, between T. C. Phillips, appellant, and the Citizens' National Bank, the appellee Citizens' National Bank has presented a motion to dismiss the appeal of appellant T. C. Phillips upon the ground that said appellant's appeal bond was not filed within 20 days, as required by our statutes under the facts of this case. This cause was tried in the court below at the April term, 1925, and final judgment rendered on May 30, 1925, and the motion of appellant Phillips for a new trial was overruled May 30, 1925. The April term, 1925, of the Seventy-Fourth district court, the court in which this case was tried, as fixed by article 30, subd. 74, Vernon's Sayles' Ann. Civ. St. Supp. 1918, began on the second Monday in April, 1925, same being the 13th day of said month, and adjourned on Saturday, June 6, 1925, at which time said term expired by limitation of law; the June term of said court beginning on the second Monday of June, same being the 8th day of June, 1925. So it will be observed, and, we think, it is the duty of this court to take judicial notice of said fact, that the April term, 1925, of said court could not by law continue more than 8 weeks, and did not, in fact, continue more than 8 weeks. This being true, in order to confer jurisdiction upon this court of his appeal, it was the duty of appellant T. C. Phillips to file his appeal bond within 20 days after the expiration of said April term of said court, which he failed to do; said bond not being filed until June 29, 1925. Appellant contends, in substance, that, inasmuch as some terms of the Seventy-Fourth district court may by law continue more than 8 weeks, that all terms of said court, in the matter of filing appeal bonds, should be treated as terms that may continue in session more than 8 weeks. We cannot agree with this contention. We think the statute fixing the terms of the district court, Seventy-Fourth judicial district, by necessary implication, made the calendar of years, months, and days following such enactment a part of the statute, and the courts, as well as litigants, are chargeable with notice of the number of weeks which any term of the court may by law continue, as though such time were expressly stated in the statute. 23 C. J. 164, § 1990, and cases cited. The Legislature, in enacting the law fixing the terms of court for the Seventy-Fourth judicial district, necessarily intended, we think, that some terms of the court could not by law continue more than 8 weeks, while others could. In the face of the plain provisions of the statute, and the law with reference to the calendar being a part of the statute, this court will not assume that the Legislature did not intend that the length of each term of court should not be determined by the calendar. This court, being chargeable with notice that the April term, 1925, at which this case was tried, could not by law continue more than 8 weeks, and the record disclosing that appellant's appeal bond was not filed within 20 days after the expiration of said term, it is apparent this court has never acquired any jurisdiction of appellant's appeal. Brazell v. Irene Independent School District (Tex. Civ. App.) 276 S. W. 1108, and cases cited. Appellee's motion to dismiss is sustained, and, as between the Citizens' National Bank and T. C. Phillips, the appeal is dismissed.

The judgment as between Mrs. Nettie L. Wilson and the Shear Company is reversed and remanded, and as to all other parties the judgment of the trial court is affirmed.

GALLAGHER, C. J., and BARCUS, J. (concurring). We concur in the disposition of this case made by our associate, Mr. Justice STANFORD. We do not think that appellant Mrs. Wilson was entitled to judgment in her favor on the verdict rendered, nor do we think that the Shear Company was entitled to judgment in its favor on such verdict. We do not wish, however, to be considered as concurring in all the findings of fact made in the course of said opinion, nor in all the conclusions of law therein expressed. Our concurrence is limited to matters essential

to the proper disposition of this appeal, and not inconsistent with the views herein expressed. In view of the fact that the judgment of the trial court is reversed and the cause remanded for another trial, we do not deem it necessary to be more specific as to the points on which we differ from the opinion as written. We think the two outstanding issues of fact to be determined on another trial are whether the shares of stock in the Rotan Grocery Company evidenced by certificate No. 112 were the separate property of Mrs. Wilson, and whether the corporation had knowledge or notice of such fact at the time it accepted the surrender of said certificate No. 112 and issued new certificates in lieu thereof in its changed corporate name to C. W. Wilson. Without an affirmative finding in her favor on these issues, we do not think Mrs. Wilson could in any event recover.

We will refrain from discussing the evidence in detail, in view of our action in remanding the case for another trial on the facts. On the subject of knowledge of or notice to the corporation with reference to Mrs. Wilson's claim that the stock purchased and evidenced by said certificate No. 112 was her separate property, we deem it proper to say that there is evidence in the present record tending to show that Mrs. Wilson thought, and may have been justified in thinking, that she was dealing directly with the corporation in the original purchase of said stock, and that she understood at the time that Mr. Shear was selling her stock belonging to the corporation, and that he was acting for the same in his capacity as president and manager thereof in making said sale. The original checks given by Mrs. Wilson for the purchase price of said stock were identified and introduced in evidence, and show that they were made payable to "H. H. Shear, Pt." There was also evidence tending to show that Mr. Shear, at the time of the purchase of said stock, might have occupied a dual capacity; that is, that, while he may have been selling his own stock in the corporation, he may have also known that Mrs. Wilson was instructing him with reference to the issuance or reissuance of new certificates in her own name and the enrollment of her name as the owner thereof on the books of the corporation in his capacity as president and general manager thereof. There was, as we view it, no interest on his part in said transaction adverse to the interests of the corporation, and no impropriety in his receiving, if he did do so, information with reference to ownership of said stock as her separate property and instructions based thereon with reference to the issuance or reissuance of the certificates evidencing the same in her own name and the enrollment of her name as owner of said stock on the books of the corporation, while at the same time acting for himself in selling his individual stock. The issuance or reis-

suance of certificates of stock in Mrs. Wilson's name was a matter in which he in his capacity as president of the corporation would necessarily have been called upon to act in behalf of said corporation, and a matter in which he could not have acted individually. Issuance or reissuance of certificates was clearly within the scope of Mr. Shear's authority and duty as president of said corporation. It is shown by the record that he in fact acted in that capacity in the reissuance of said stock in October, 1916. There is no legal barrier to the effectiveness of any notice given under such circumstances. Should the case be again submitted to a jury and a charge given by the court to aid the jury in passing on the issue of knowledge or notice, such charge should properly apply the law to the facts before the jury at that time. 4 Fletcher Cyc. Corp. § 2218, pp. 3437–3441; Id.; § 2235, pp. 3463, 3464; Id., §§ 2245 and 2246, pp. 3477–3480; Goldstein v. Union Nat. Bank, 109 Tex. 555, 213 S. W. 584, 592, 593; Central Bank & Trust Co. v. Ford (Tex. Civ. App.) 152 S. W. 700, 704 (writ refused); Smith v. Wilson, 1 Tex. Civ. App. 115, 20 S. W. 1119, 1122, 1123; First Nat. Bank v. Burns, 88 Ohio St. 434, 103 N. E. 93, 94, 96, 49 L. R. A. (N. S.) 764; Traders' National Bank v. Smith (Tex. Civ. App.) 22 S. W. 1056, 1058, 1059; Brobston v. Penniman, 97 Ga. 527, 25 S. E. 350, 351; Morris v. Georgia Loan, Savings & Banking Co., 109 Ga. 12, 34 S. E. 378, 46 L. R. A. 506, 510–513.

The Shear Company denied that said certificate No. 112 was the property of Mrs. Wilson, but pleaded in the alternative, if such was the fact, that "she in all things authorized, suffered, permitted, and acquiesced in the control and disposition of said stock by her agent, C. W. Wilson, and in all respects intrusted him with its care, custody, and control, directed him to collect dividends thereon, and suffered him to appropriate the same," and that, if he converted said stock to his own use and benefit, or fraudulently disposed of the same, such action was the direct result of his agency. There was evidence tending to show that, at the time of the purchase of said stock, Mrs. Wilson, after directing that a certificate be issued in her name therefor, and that her name be entered on the books of the corporation as the owner thereof, requested Mr. Shear to send said certificate to the Citizens' National Bank, to be held by it as collateral for the loan out of the proceeds of which almost the whole of the purchase price of said stock was paid, or to deliver said certificate to her husband, to be by him turned over to said bank for such purpose; that said certificate No. 112 was delivered to her husband by Mr. Shear; and that he did take it and deliver it to said bank for the purpose contemplated. There was also evidence tending to show that said stock remained in the name of Mr. Shear on the books of the corporation; that three divi-

dends were declared thereon and paid to him, and that he, each time a dividend was declared, gave his individual check to said Wilson for the amount of such dividend; that Wilson turned said checks over to his wife or deposited them to her credit in said bank, and that such dividends were applied in discharge of said purchase money note; that said certificate remained as collateral to said loan until the remaining balance thereof was paid on October 1, 1916; that Wilson then received said certificate from the bank, and immediately took the same to the office of the corporation, and had new certificates therefor issued in his own name. There is nothing to show that Mrs. Wilson authorized the bank to deliver said certificate to her husband, nor that she knew of such action at the time. The facts above recited are practically all bearing on this issue which occurred on or prior to the reissuance of said stock at the date aforesaid. Of course the action of the Shear Company in so reissuing said stock could not have been predicated on anything that occurred thereafter.

Said certificate No. 112 was issued to H. H. Shear, and had indorsed thereon a transfer in blank, and such transfer was signed by said Shear. Mrs. Wilson, if the owner of said certificate, had the right to insert her name in the blank provided therefor in said transfer. She would then have appeared on the face of such transfer to be the owner of the certificate. Not having done so, her husband, being in possession of said certificate, was, as to everyone except one knowing or having notice of her ownership, apparently the owner thereof, and entitled to have the same reissued in his own name. However, if the Shear Company at that time knew, or had notice, that said stock belonged to Mrs. Wilson, it necessarily knew, or was charged with knowledge, that such apparent ownership was not real. If it had such notice or knowledge, the situation was the same as if Mrs. Wilson had actually written her name in the blank space for the name of the grantee in said transfer aforesaid. 6 Fletcher Cyc. Corp. § 3854, p. 6488; Id. § 3798, p. 6344; Strange v. H. & T. C. R. R. Co., 53 Tex. 162, 170, 171. Mrs. Wilson being a married woman, the statute in force at that time (R. S. 1911, art. 4621, as amended by Acts 33d Leg. c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4621]) vested in her the sole management, control and disposition of her separate property, both real and personal, but provided that the joint signature of herself and her husband was necessary to the transfer of stocks belonging to her, or of which she was by said act given control. If said certificate No. 112 was in fact the separate property of Mrs. Wilson, then the issuance of a new certificate in lieu thereof to Wilson in person involved a transfer of the same from her to him and the corporation's recognition of him as the owner thereof and the registration of

his name on its books as such owner. 6 Fletcher Cyc. Corporations, § 3784, p. 6304; Id. § 3789, p. 6317; Baker v. Wasson, 53 Tex. 150, 156; Cattle Co. v. Burns-Walker & Co., 82 Tex. 50, 17 S. W. 1043; 14 C. J. 774, § 1176.

The laws of this state require the husband and wife to join in disposing of the separate real estate of the wife. Our courts have uniformly held that a deed from the wife direct to her husband is a nullity. Graham v. Stuve, 76 Tex. 533, 534, 13 S. W. 381; Hughey v. Mosby, 31 Tex. Civ. App. 76, 71 S. W. 395 (writ refused). Our courts have also uniformly held that a husband cannot convey his wife's separate lands under a power of attorney from her direct to him, although joining in the conveyance individually besides acting in the name of his wife under such power. Cannon v. Boutwell, 53 Tex. 626, 627, 628; Cardwell v. Rogers, 76 Tex. 37, 42, 43, 12 S. W. 1006; Peak v. Brinson, 71 Tex. 310, 316, 11 S. W. 269. It has been held that, when an equitable title to real estate has vested in a married woman, it cannot be divested by a conveyance of such property by the holder of the legal title when the grantee has knowledge of the facts. Cauble v. Worsham, 96 Tex. 86, 92, 70 S. W. 737, 97 Am. St. Rep. 871. See, also, Green v. Priddy, 112 Tex. 567, 575, 576–582, 250 S. W. 656.

If the Shear Company was authorized to assume that Wilson was acting as agent for his wife in surrendering certificate No. 112 for cancellation and reissuance, it was not authorized to assume that he had any special power in the premises merely because he was her husband. Every agency is subject to the legal limitation that it cannot be used for the benefit of the agent himself without special authority, and everyone is charged as a matter of law with notice thereof. So, whenever it appears that the interest of an agent and the interest of his principal are necessarily in opposition in a particular transaction, parties dealing with the agent are charged with notice of his lack of authority to bind his principal. So a person dealing with an agent as such is bound to know as a matter of law that such agent has no power to transfer or apply the property of his principal to the satisfaction of his own debts. 21 R. C. L. 910–913, §§ 88, 87, and 92; 2 C. J. 837, § 519; Oshkosh Nat. Bank v. Munger, 95 F. 87, 36 C. C. A. 659; Hunter v. Eastham, 95 Tex. 648, 69 S. W. 66; Trippett v. Nash-McLarty Motor Co. (Tex. Civ. App.) 269 S. W. 205, 207. The principle involved in the authorities just cited has been applied to the transfer or registration of the transfer of stock on the books of a corporation, and the corporation has been held charged with notice that an agent could not, under a general power, have his principal's stock transferred to himself, but that such action required special or express authority from the principal. 14 C. J. 772, § 1174; 26 Am. &

Eng. Ency. of Law, 890, 891; Geyser-Marion Gold Mining Co. v. Stark, 106 F. 558, 45 C. C. A. 467, 53 L. R. A. 684, 689, 690; Tafft v. Presidio Railroad Co., 84 Cal. 131, 24 P. 436, 11 L. R. A. 125, 18 Am. St. Rep. 166, 170, 171. See, also Vernon, G. & R. R. Co. v. Washington Civil Township, 48 Ind. App. 309, 95 N. E. 599, and Miller v. L. & N. R. R. Co., 83 Ala. 274, 4 So. 842, 3 Am. St. Rep. 722.

There is no evidence in the record before us tending to show that Mrs. Wilson knew as a fact that said certificate of stock No. 112 remained in the name of Shear with his indorsement in blank on the back thereof, nor that she authorized her husband to surrender it and have a new certificate issued in lieu thereof to any one, much less to himself. The record fails to show any attempt to comply with the requirements of the statute cited controlling the manner of transferring stocks belonging to married women. We have been unable to find any case in which said provision of the statute has been construed. In every case found involving the transfer of stocks, even where the preliminary negotiations were conducted by the husband as agent for the wife, the actual transfer was signed by both of them. Bird v. Bird (Tex. Civ. App.) 212 S. W. 253, 255, pars. 5 and 2; Barber v. Keeling (Tex. Civ. App.) 204 S. W. 139, 141, par. 7. We think said statute contemplates a transfer in writing signed by both husband and wife, or at least the written indorsement of the signature of each of them on the back of the certificate, with implied authority on the part of the transferee to write a proper transfer above such signatures. We further think that, if said certificate No. 112 was the separate property of Mrs. Wilson, and the corporation had notice thereof, the surrender of said certificate by her husband and the issuance of new certificates in lieu thereof in his name did not, as between Mrs. Wilson and the corporation, divest her of her title to such stock. We do not think that the facts in this record raise an issue of estoppel against the assertion by her of any rights she may have against the corporation if she was such owner and if the corporation had such notice. Cauble v. Worsham, supra; Green v. Priddy, supra; Hannay v. Harmon (Tex. Civ. App.) 137 S. W. 406, 408; Gillean v. Witherspoon (Tex. Civ. App.) 121 S. W. 909, 916, 917; White v. Simonton, 34 Tex. Civ. App. 464, 79 S. W. 621, 623; Bailey v. Bailey (Tex. Civ. App.) 188 S. W. 264, 265.

### On Motion for Rehearing.

PER CURIAM. Rehearing denied.

STANFORD, J. (dissenting). I am unable to agree with my associates in the disposition of the motion for rehearing by appellee the Shear Company.

This court reversed and remanded this cause as between Mrs. Wilson and the Shear Company upon the ground that the trial court erred in rendering judgment for said company without requiring the jury to answer special issue No. 11 and specially requested issue No. 7, thereby holding that the ultimate controlling issue on this phase of the case was whether the Shear Company, at the time it canceled and reissued said stock to C. W. Wilson, had notice or was chargeable with notice, of Mrs. Wilson's rights in said stock. After a further examination of the question, the writer is of the opinion that in this we erred—that the controlling issue is not one of notice, but that it is one of negligence or no negligence under all the facts and circumstances, and also of proximate cause. While, as stated in the original opinion, Mrs. Wilson sought to recover on the ground that the two corporations converted her stock, at the same time, as to the transaction of 1916, she also sufficiently pleaded negligence on the part of the Shear Company as a basis for recovery, as follows:

"(b) The corporation, with knowledge and notice that this defendant was owner of a certificate of 50 shares of the capital stock of the corporation, wrongfully transferred said stock to C. W. Wilson, and failed to use reasonable care and diligence in protecting said shares from unauthorized transfer to C. W. Wilson. * * * This defendant shows that the acts and omissions of the Rotan Grocery Company and its successor, the Shear Company, each and all were the direct and proximate cause of this defendant's loss of her stock," etc.

Appellee the Shear Company, among other things, pleaded a general denial, and also pleaded, in substance, that Mrs. Wilson was negligent, in that she authorized, suffered, permitted, and acquiesced in C. W. Wilson having the possession, control, management, and disposition of said stock indorsed in blank, and thereby clothed him with all the indicia of ownership, and that such negligence was the proximate cause of the loss of said stock, etc. So the pleadings were sufficient to raise the issue of negligence on the part of both the Shear Company and also on the part of Mrs. Wilson, and were also sufficient to raise the issue as to whose negligence was the proximate cause of the loss.

A corporation is, in a sense, a trustee for its stockholders for the purpose of protecting their shares from unauthorized transfers, and, as such trustee, the measure of its duty is to exercise reasonable care and diligence to protect such stock from unlawful transfers, and, if by reason of its negligent failure to perform such duty such stock is lost, it is liable. U. S. Fidelity & Guaranty Co. v. Ramey (Tex. Civ. App.) 261 S. W. 503; Strange v. H. & T. C. R. R. Co., 53 Tex. 162; Seeligson v. Brown, 61 Tex. 119; Spencer v. James (Tex. Civ. App.) 31 S. W. 543; 30 Ann. Cas. 1174, 1175; 53 L. R. A. 684; 6 Fletcher Cyc.

Corps. § 3830; 14 C. J. 772, §§ 1174, 1175; St. Romes v. Levee Steam Cotton Press Co., 127 U. S. 614, 8 S. Ct. 1335, 32 L. Ed. 289; Western Union Tel. Co. v. Davenport, 97 U. S. 369, 24 L. Ed. 1047. Again, the rule seems to be well settled that, when the party offering said certificate for cancellation and reissue has some authority with reference to said certificate, the measure of the duty of such corporation in reissuing is ordinary care and diligence under all the circumstances, and a want of such care will render it liable. See note, "Nature of Liability," 30 Ann. Cas. 1174, and cases cited. In this case, it is thought, it is peculiarly proper, appropriate, and right that the basis of the liability of the Shear Company should be negligence, or what one of ordinary care and diligence would have done under the same or similar circumstances—in other words, was the Shear Company guilty of negligence under all the circumstances in canceling and reissuing certificate No. 112 to C. W. Wilson in October, 1916? The record fails to show any suspicion of fraud or collusion on the part of the Shear Company with any one, or that said company sought to reap any benefit whatever by said transaction. Mrs. Wilson and C. W. Wilson were husband and wife, and had been for many years, and so continued until after this suit was filed in 1923, enjoying that trust and confidence in each other that is usual, and should always exist, between husband and wife. C. W. Wilson at this time was a man of good standing. Mrs. Wilson had committed to him the possession and the full control and management of said stock, the collection of dividends, etc. She had clothed him with all the indicia of ownership. His possession of said certificate, indorsed in blank by H. H. Shear, the record owner, evidenced perfect title in him. There was no record anywhere in any form to indicate that Mrs. Wilson had an interest in said certificate, and, if she had any title, her title was purely an equitable one. Said certificate had indorsed upon its face: "Transferable only on the books of the company in person or by attorney upon the surrender of this certificate properly indorsed," which constituted a part of the contract between the company and the holder of said indorsed in blank certificate, and created a legal obligation on the part of the Shear Company, when C. W. Wilson presented same therefor, to cancel and reissue to him. Dooley v. Milling Co., 134 Iowa, 468, 109 N. W. 864, 13 Ann. Cas. 297, and cases cited. This certificate indorsed in blank was negotiable, and title to same passed from hand to hand by delivery. There is no evidence that either the Rotan Grocery Company or its successor, the Shear Company, acquired any notice of Mrs. Wilson's interest in said certificate after February, 1913. If, by reason of some verbal statement, H. H. Shear did in 1913 acquire notice of Mrs. Wilson's interest in said certificate,

as it was indorsed in blank by the record owner, was negotiable, and title passed from hand to hand by delivery, this could not be actual notice to him or the Shear Company of her interest in 1916. As said by our own Supreme Court in Strange v. H. & T. C. Railway Co., supra:

"A provision for the record of the transfers of certificates, to be made upon the books of the company, as required by the Act of December 19, 1857 (Pasch. Dig. art. 4909 [now article 1168], was intended for the benefit of the company, so that it might know, by ready reference, who were legal shareholders, * * * and to whom it could safely issue new stock," etc.

The record further discloses that C. W. Wilson was a man of some means, and at the time he presented certificate No. 112 for cancellation and reissue he bought and paid cash for 150 shares in the Shear Company. Mrs. Wilson could have effectually protected her rights in said stock by taking possession of said certificate, or by having it canceled and reissued to her, or by inserting her name in the blank indorsement, but she failed to take any such precaution, and, having clothed her husband with all the indicia of ownership, because, as she said, she had confidence in him, and he having abused her confidence by appropriating her property, it would seem inequitable that the Shear Company under the facts of this case should bear the loss. At any rate, clearly, it is thought, the controlling issues in this case were negligence and proximate cause.

It is thought article 4621, Vernon's Sayles' Statutes, providing for conveyances of stock, the separate property of the wife, has no application to the facts of this case. If Mrs. Wilson had taken possession of said certificate indorsed in blank, and presented it to the corporation, and had it canceled, and a new certificate issued to her, she thus becoming the record owner, then, if she had sold said certificate, and desired to transfer same, she would have to be joined by her husband in the execution of such transfer as provided by statute. But certificate No. 112 had been indorsed in blank by H. H. Shear, the record owner, and was transferable by delivery, and it was no more necessary for Mrs. Wilson and husband to execute a transfer in order to convey title to it than if it had been a promissory note indorsed in blank, and so payable to bearer.

So the liability of the Shear Company should be determined, not by whether or not it was charged with notice of the equitable claim of title in Mrs. Wilson, but by whether or not it was negligent under all the circumstances in canceling and reissuing the stock in question to C. W. Wilson (Geyser-Marian Gold Co. v. Stark, 106 F. 558, 53 L. R. A. 684; 30 Ann. Cas. pp. 1174 and 1175; also cases

cited above), and by the further question as to whether or not such negligence, if any, was the proximate cause of the loss or injury (Brown v. Insurance Co., 42 Md. 384, 20 Am. Rep. 90; Smith v. Railway Co., 91 Tenn. 221, 18 S. W. 546; 14 C. J. 772, § 1174); and the burden of proof was upon appellant Mrs. Wilson to show not only that the Shear Company, under all the circumstances, was guilty of negligence in canceling and reissuing said stock to C. W. Wilson, but also to show that such negligence was the proximate cause of the loss or injury. In response to special issue No. 9 requested by the Shear Company, the jury found that Mrs. Wilson was negligent in the exercise of control and possession of said certificate No. 112, and also that such negligence was the proximate cause of the issuance of new certificates in lieu of No. 112 to C. W. Wilson. The issue of negligence on the part of the Shear Company in reissuing said stock to C. W. Wilson was not submitted, and not requested by either side to be submitted. This being true, and there being evidence in the record to authorize such finding, it would be the duty of this court, if such finding were necessary to support the judgment, to presume that the trial court resolved said issue in support of the judgment. However, the jury having found that Mrs. Wilson was negligent in the control of the stock, and that such negligence was the proximate cause of its loss, required the rendition of judgment in favor of the Shear Company in any event, whether it was negligent or not. The controlling issues in this case, it is thought, were: (1) Was the Shear Company guilty of negligence under all the circumstances in issuing said stock to C. W. Wilson, and, if so, was such negligence the proximate cause of the loss? (2) Was Mrs. Wilson guilty of negligence in her control of said certificate, and, if so, was such negligence the proximate cause of the loss? The latter question, having been answered against Mrs. Wilson, required the judgment rendered against her. The matters presented in special issue No. 11 and in specially requested issue No.·7 are not ultimate controlling issues, but are only evidentiary in their nature, proper to be considered by the jury in determining the ultimate controlling issues above referred to. The court did not err in failing to require said special issues to be answered, because they did not present controlling issues, and, in view of the answer of the jury to special issue No. 9, the answers to issue No. 11 and specially requested issue No. 7 would have been unimportant and immaterial.

The motion of appellee the Shear Company ought to be granted, and the assignments here discussed overruled, and the judgment of the trial court as between Mrs. Wilson and the Shear Company, as well as to other parties, ought to be affirmed.