## BREWER v. HAMPTON.

### No. 2303.

Court of Civil Appeals of Texas. Eastland.
Oct. 30, 1942.

Rehearing Denied Dec. 4, 1942.

Woodruff &, Holloway, of Brownwood, for appellant.

Fred O. Jaye, of De Leon, for appellee.

LESLIE, Chief Justice.

Mrs. Gussie Hampton, a feme sole, instituted this suit September 15, 1941, against D. (Dave) M. Brewer and his son, Lee Brewer, to recover a one-tenth interest in a section of land in Comanche County and for partition of the same. Said D. M. Brewer died August 14, 1941, and his wife, Ruth Music Brewer, died prior to death of the husband. Lee Brewer was shown to be their only surviving heir. The defendant answered by plea of not guilty, and the trial resulted in judgment for plaintiff as prayed for. The defendant appeals. There are no findings of fact or conclusions of law.

The transcript contains the plaintiff's original petition, as well as her first amended original petition. The original petition specifically alleged the different instruments constituting the chain of title by which the plaintiff laid claim to the one-tenth interest in the land.

Near the conclusion of the trial, or after both parties had rested, the Court permitted the plaintiff to file said first amended original petition. In its first count it was a suit in trespass to try title, but the plaintiff did not specifically plead the different links in her chain of title as in her original petition. She merely alleged that D. M. Brewer was common source of title.

In the second count she asked for partition, and in the third count she alleged the facts and circumstances under which an attorney had been employed under a written contract to institute and prosecute a suit for the recovery of said section of land. . That the attorney had successfully performed such services, thereby acquiring an equitable interest or title to an undivided one-tenth interest in the land which said attorney thereafter deeded to plaintiff.

The material facts of this law suit developed as follows:

January 13, 1937, D. M. Brewer and wife, Ruth Music Brewer deeded to Lee Brewer, their son, said section of land which was at all times the separate property of D. M. Brewer. The consideration for the above conveyance purports to have been the promise and agreement on the part of the son to provide said parents with future support and maintenance.

Thereafter, the parents became dissatisfied with the arrangement and instituted suit against the son to cancel the deed of January 13th. The suit was predicated on fraud. It was alleged that Lee Brewer had induced his parents to make the conveyance to him by false and fraudulent promises to them of future support, without any intention on his part at the time of complying therewith. That the promises and representations were material, believed and relied on by the parents to their injury, etc.

That suit (filed about April, 1938) for cancellation of said deed was No. 8231 on the docket of the District Court of Comanche County. D. M. Brewer and his wife, Ruth Music Brewer, were plaintiffs therein. No mention was made in that suit that D. M. Brewer was insane, or in any respect incapable of protecting. his individual rights by suit or otherwise. That litigation proceeded on the theory that said D. M. Brewer was sui juris.

That cause came on for trial and a judgment was rendered May 9, 1938, in favor of said plaintiffs, cancelling the deed to their son, Lee Brewer, but making no reference to or adjudication of any rights under and by virtue of the attorney's contract presently referred to.

To procure the filing and prosecution of that cause (8231), Mrs. Ruth Music Brewer, wife of D. M. Brewer, entered into a written contract of April 30, 1938, with an attorney, agreeing to compensate him for such services in an amount equal to "ten per cent of all that he may recover, whether in money or in kind". That suit contemplated the cancellation of said deed and the restoration of title in D. M. Brewer as before the purported conveyance to Lee Brewer. The judgment so decreed.

The contract of April 30, 1938, between Mrs. Brewer and the attorney, recited that in executing the same she was "acting individually and as next friend of David M. Brewer, my husband, who is non compos mentis". In the notary's certificate of acknowledgment by Mrs. Brewer, he recites: "Acknowledged by Mrs. Ruth Music Brewer, acting individually and as next friend of· David M. Brewer, non compos mentis, * * *".

The attorney signed and accepted the obligations of the contract May 3, 1938. It will be observed that the judgment cancelling the deed was taken May 9, 1938, in Cause 8231, in which Mr. and Mrs. Brewer were plaintiffs. Since Mrs. Brewer executed the attorney's contract on April 30, 1938, and had it accepted by him on May 3rd, there is at least an inconsistency or contradiction in her reciting in such contract that her husband was a non compos mentis. . In other words, on April 30th and May 3rd Ruth Music Brewer acting for herself and as next friend of her alleged non compos mentis husband agreed to give the attorney one tenth of said section of land (the separate property of·the husband) to procure the cancellation of said deed, whereas, she and her said husband were then prosecuting said suit in their individual right—sui juris—and did on May 9, 1938, obtain a judgment effecting such cancellation and confirming title in D. M. Brewer.

Be that as it may, and conceding that the husband was non compos mentis at the time recited in the contract with the attorney, it is not believed that the wife un-

der such circumstances had any power or authority in law to thus deal with such separate property of the husband.

One of the essential links in the plaintiff's chain of title was the "contract of sale for attorney's fees * * *". That alleged "contract from Ruth Brewer and her husband, D. M. Brewer", was executed by Ruth Music Brewer only. She executed that contract and in doing so she recited therein she was "acting individually and as next friend of David M. Brewer, my husband, who is non compos mentis". The decision of this suit hinges on the affectiveness of that instrument to convey the interest in said land now claimed by plaintiff.

 Appellant attacks the judgment in this case by several different assignments of error. By the first it is contended that since there is no evidence that David M. Brewer was incompetent, the contract executed by Ruth Music Brewer, as next friend of David M. Brewer, was without the effect to convey an interest in the land, the separate property of David M. Brewer. By the second point it is insisted that Ruth Music Brewer was without authority to bind David M. Brewer in making the contract with the attorney. That she was a mere volunteer, undertaking to contract with reference to the separate property of her husband. In the third point it is insisted that there is neither pleadings nor evidence of any facts sufficient to divest title out of David M. Brewer of the land sought to be recovered by the plaintiff. By the sixth point the contention is made that the trial court should have rendered a judgment in favor of the appellant.

These contentions are predicated upon the proposition that where the husband is insane the wife cannot alienate his separate property. We do not believe that this record presents any evidence establishing that such was the condition of D. M. Brewer's mind at the time the wife made the purported contract with the attorney, but if it be conceded that such was his mental condition, the above propositions should nevertheless be sustained. In support of such conclusion the following authorities are cited:

 In the law of Marital Rights in Texas by Speer, 3 Ed., page 289, section 231, it is said: "Our statute provides for the appointment of guardians of persons of unsound mind, and the court is authorized to make orders for the support of such person's family and the education of his children when necessary; and under these statutes it is held that where the husband is insane the wife has no power to convey * * * the husband's separate property * * * during the period of his insanity". Citing Heidenheimer v. Thomas, 63 Tex. 287.

It is further said in the text, page 637, Section 519, in the discussion of husband and wife as parties to litigation: "To avoid a possible misapprehension of the rule where the husband is insane, it is proper here to notice the provision of the statute in such cases. Upon analogy it would seem that where he is for any reason incapacitated from bringing suit,—as by his disertion of the wife, or imprisonment in a penitentiary, or by his becoming insane,— the wife can maintain suits for the community in her own name. But while it is true in the two cases first stated, it is not in the last. Had the statute not provided differently it doubtless would have been the rule. But our statute makes provision for the appointment of a guardian pending the husband's insanity, and it is incumbent upon the guardian to prosecute and defend suits for his ward. An insane person is not civilly dead. The husband during his sanity, and his guardian during insanity, is entitled to the control of not only his separate estate, but of the community as well. In cases of abandonment of the wife and incarceration in the penitentiary, the law has made no provision for a representative of the husband, and the exigencies of the situation demand that someone act, and none is by law or nature so well adapted to it as the wife * * *. The wife is entitled first to the guardianship of her insane husband, and as guardian may maintain any suit necessary for the preservation of the * * * his separate estate. If the wife becomes insane, no appointment as guardian is necessary to enable the husband to sue for her. He has this authority without."

There is a further discussion in said text concerning the power of the wife to bind her husband for necessaries, and what is there said is pertinent here. On page 95 of said text, section 80, it is stated: "Upon this principle (that of necessity) it was decided in Forbes v. Moore, 32 Tex. [195], 196, that the wife would have the right during the insanity of her husband to as-

sume control and dispose of, not only her separate property, but the community, and also so much of her husband's separate property as would be necessary for the support of herself and family, and it was again intimated in Cason v. Laney, Tex. Civ.App., 27 S.W. 420, that she would probably have no authority to dispose of any more of the community or of her husband's property, than was sufficient to supply the wants of herself and family. *But this is not now the law, for statutes have been interposed which authorize the appointment of a guardian in such cases, and if any resort by the wife be had to the husband's separate property * * * such resort must be through our probate court".* Citing again the opinion of our Supreme Court in Heidenheimer v. Thomas, 63 Texas 287. (Italics ours.)

The Heidenheimer case was followed by our Supreme Court in Texas & P. Ry. Co. v. Bailey, 83 Tex. 19, 18 S.W. 481.

The same proposition of law is affirmed as correct in Texas Law Review, Vol. 1, page 237, wherein it is stated: "Since the act of 1876 the wife of an insane husband under Revised Statutes, Art. 4238 (4267) must seek the appointment of a guardian for him, and if she can qualify as a guardian then she has the right to dispose of the husband's separate property under orders of court." See Vol. 6, Texas Law Review, Page 516.

In the Heidenheimer case our Supreme Court, in considering the authority of the wife to convey the separate property of the husband when he is insane, held:

"We are of the opinion, however, that no such power rests in the wife of an insane person, at least in reference to community property or the separate property of the husband.

"The law provides for just such a case, and renders unnecessary the exercise of any such power by the wife.

. "The law provides for the appointment of guardians of the estates of persons of unsound mind, and habitual drunkards, as well as for the appointment of guardians of their persons. R.S., 2653–2670 [Vernon's Ann.Civ.St. arts. 4267–4284]."

Bearing upon the duties and authority of a next friend in this type of litigation, the general rule is stated in 32 C.J. 775 as follows: "The rights and powers of a person representing an insane litigant are ordinarily restricted to matters connected with the litigation at hand, and he cannot otherwise bind the insane person or his estate. He has not title to the property involved in the litigation."

In Mitchell v. Thompson, Tex.Civ. App., 286 S.W. 642, 646, the court said: "A next friend is a fiduciary only in the sense that he may institute and prosecute a suit in behalf of a minor if, and to the extent that, he is recognized by the court as a proper person to act in such capacity. He may continue to act only by permission and at the sufferance of the court. A next friend is not a fiduciary in the sense that he has the right to receive, dispose of, possess, or control any property or funds of such minor, except under certain conditions by executing a good and sufficient bond."

For other authorities in support of the holding in this opinion, see Glasgow v. McKinnon, 79 Tex. 116, 14 S.W. 1050; White v. Simonton, 34 Tex.Civ.App. 464, 79 S.W. 621, error refused; Williams v. Sinclair-Prairie Oil Co. et al., Tex.Civ. App., 135 S.W.2d 211.

Being of the opinion that the contract between Ruth Music Brewer (individually and as next friend of her alleged non compos mentis husband) with the attorney conveyed no interest whatever in the section of land owned by D. M. Brewer in his own separate right, it follows that for the reasons stated said assignments of error are sustained and the judgment of the trial court is reversed and judgment is here rendered in favor of the appellant.